In re Petition of Bruce CRAIG for Order Directing Release of Grand Jury Minutes.

Bruce CRAIG, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 1645, Docket 96–6264.

United States Court of Appeals, Second Circuit.

Argued June 6, 1997.

Decided Dec. 15, 1997.

Lucinda A. Sikes, Public Citizen Litigation Group, Washington, DC (David C. Vladeck, of counsel) (Debra L. Raskin, Vladeck, Waldman, Elias & Englehard, P.C., New York City, of counsel), for Petitioner–Appellant.

Mary Jo White, United States Attorney, Southern District of New York City (Jennifer L. Borum, John M. McEnany, Assistant United States Attorneys, of counsel), for Respondent–Appellee.

(Mark H. Lynch, Christopher N. Sipes, Covington & Burling, Washington, DC, for amici curiae supporting Petitioner–Appellant The American Historical Association, The Organization of American Historians, The National Council on Public History, and The Society of American Archivists.)

Before: KEARSE and CALABRESI, Circuit Judges, and MUNSON,* District Judge.

CALABRESI, Circuit Judge:

Bruce Craig appeals from an order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge)* denying his petition to unseal the seventy-nine page transcript of the 1948 grand jury testimony of Harry Dexter White. Although the district court recognized that disclosure of grand jury materials under circumstances other than those specifically enumerated in Federal Rule of Criminal Procedure 6(e)(3) is sometimes permissible, it nonetheless denied Craig's petition. The court held that Craig did not, at this time, present grounds that were sufficiently exceptional to justify overcoming the strong presumption of grand jury secrecy. Because we cannot say that the court's nuanced decision

---

* The Hon. Howard G. Munson, United States District Judge for the Northern District of New York, sitting by designation.

constituted an abuse of discretion, we affirm its order.

## I.  Background

Craig, a doctoral candidate at American University, is writing his dissertation on Harry Dexter White, a former Assistant Secretary of the Treasury who was accused of having been a communist spy.  In 1948, White appeared before a special grand jury to answer charges against him.  He was not then indicted, and a few months later, just days after appearing in front of the House Un–American Activities Committee, where he emphatically and publicly denounced the allegations, he died.

According to Craig, subsequent to White's death, new evidence has been found demonstrating that White had, in fact, provided information to the American Communist Party ("ACP"), and that this information ended up in Soviet hands.  It is unknown, however: (a) what White thought would be done by the ACP with the information;  (b) whether the information he furnished was confidential; and (c) what his reasons for disclosing the data to the ACP were.  Craig maintains that he has reviewed all publicly available sources on the allegations against White.  And he asserts that the transcript of the grand jury testimony is the only document that might reveal White's perspective on these charges. For these reasons, Craig contends that the release of the transcript is essential to his research and that, given the historical impact on domestic politics in the 1950s of the charges made against White and others, such release is strongly in the public's interest.

In his petition to the district court, Craig conceded that none of the exceptions to the rule of grand jury secrecy enumerated in Federal Rule of Criminal Procedure 6(e)(3) applied to his petition.· He nevertheless requested that the district court use its "inherent supervisory authority" over grand juries to release the transcript because of the public interest in the document.  The district court noted that while disclosure of grand jury testimony is permissible outside of the boundaries of Rule 6(e), such disclosure has only been permitted in "exceptional circumstances."  The court, both at oral argument

and in its opinion, discussed a number of factors that were relevant to whether disclosure should be granted; among these were the government's opposition to Craig's motion, and the fact that there had been no previous disclosure of the grand jury material requested.  After comparing his petition to similar "historical interest" grand jury disclosure cases, the court concluded that Craig's petition did not present sufficiently extraordinary circumstances to justify the release of the secret grand jury material.  *See In re Petition of Craig,* 942 F.Supp. 881, 882–83 (S.D.N.Y.1996).

Craig argues on appeal that the district court abused its discretion by imposing a requirement of "extraordinary circumstances," and should have considered only whether the public (and his) interest in the grand jury records outweighs the reasons for maintaining the rule of grand jury secrecy. The government, instead, devotes much of its response to asserting that the district court had no authority even to consider departing from the confines of Rule 6(e).  In the alternative, the government contends that if the court did have the authority, it soundly exercised its discretion in denying Craig's petition and that it was not compelled to make its decision in the manner advocated by Craig.  In this respect, the government maintains that "mere historical interest" should never be sufficient to permit the disclosure of grand jury transcripts.

## II.  Discussion

### A.  The District Court's Authority to Order Disclosure Outside of Rule 6(e)(3)

■  There is a tradition in the United States, a tradition that is "older than our Nation itself," that proceedings before a grand jury shall generally remain secret.  *In re Biaggi,* 478 F.2d 489, 491 (2d Cir.1973) (quoting *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959)).  This tradition is codified in Federal Rule of Criminal Procedure 6(e).  *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218–19 n. 9, 99 S.Ct. 1667, 1672–73 n. 9, 60 L.Ed.2d 156 (1979).  The rule of secrecy has been justi-

fied by the important ways in which it is said to contribute to the success of grand juries and to the protection of those who appear before them. Its purposes include:

"(1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 985–86 n. 6, 2 L.Ed.2d 1077 (1958) (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir.1954)).[1]

The rule of secrecy, however, is not without exceptions. Those exceptions have developed historically alongside the secrecy tradition and, more recently, in the practice of the federal courts. They also are codified in Rule 6(e)(3). *See In re Hastings*, 735 F.2d 1261, 1268–69 (11th Cir.1984). By this rule, district courts, as part of their supervisory authority over the grand juries that they have empaneled, are explicitly given the discretion to determine whether, if one or more of the listed exceptions to grand jury secrecy apply, disclosure of records is appropriate. *See Douglas Oil*, 441 U.S. at 225–26, 99 S.Ct. at 1675–76; *see also Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959) ("[T]he federal trial courts as well as the Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge. Our cases announce the same principle, and Rule 6(e) is but declaratory of it.") (footnotes omitted).

■ Although, by delimiting the exceptions to grand jury secrecy, Rule 6(e)(3) governs almost all requests for the release of grand jury records, this court has recognized that there are certain "special circumstances" in which release of grand jury records is appropriate even outside of the boundaries of the rule. *See In re Biaggi*, 478 F.2d at 494 (supplemental opinion). This conclusion is consistent with the origins of Rule 6(e), which reflects rather than creates the relationship between federal courts and grand juries. *See Pittsburgh Plate Glass Co.*, 360 U.S. at 399, 79 S.Ct. at 1240; *In re Hastings*, 735 F.2d at 1268–69 (citing Notes of Advisory Committee on Rules, following Fed. R.Crim.P. (discussing the origins of amendments to Rule 6 in the practice of federal courts)).[2]

*In re Biaggi*, 478 F.2d at 491–92.

1. Chief Judge Friendly restated these objectives in a somewhat different form in *In re Biaggi:* The tradition [of grand jury secrecy] rests on a number of interests—the interest of the government against disclosure of its investigation of crime which may forewarn the intended objects of its inquiry or inhibit future witnesses from speaking freely; the interest of a witness against the disclosure of testimony of others which he has had no opportunity to cross-examine or rebut, or of his own testimony on matters which may be irrelevant or where he may have been subjected to prosecutorial brow-beating without the protection of counsel; the similar interests of other persons who may have been unfavorably mentioned by grand jury witnesses or in questions of the prosecutor; protection of witnesses against reprisal; and the interests and protection of the grand jurors themselves.

2. It is evident that, like the authority to disclose grand jury records within the parameters set by Rule 6(e), the authority to determine whether, outside of those parameters, special circumstances warranting release exist should rest with the district court that initially supervised the grand jury. *See Douglas Oil*, 441 U.S. at 225, 99 S.Ct. at 1675 ("[T]he policies underlying Rule 6(e) dictate that the grand jury's supervisory court participate in reviewing such requests, as it is in the best position to determine the continuing need for grand jury secrecy. Ideally, the judge who supervised the grand jury should review the request for disclosure, as he will have first-hand knowledge of the grand jury's activities.").

■ By arguing that the district court did not have the authority to go beyond the six exceptions of Rule 6(e)(3), the government suggests that we should overrule—or at least sharply limit the scope of—our controlling *Biaggi* precedent. We decline to do so, and endorse the powerful holding of Chief Judge Friendly that while there is a long "tradition" of grand jury secrecy, it "is not," however, "absolute." *In re Biaggi*, 478 F.2d at 492. Furthermore, we repeat his recognition that permitting departures from Rule 6(e) is fully consonant with the role of the supervising court and will not unravel the foundations of secrecy upon which the grand jury is premised. "Our decision [to affirm release of grand jury minutes beyond Rule 6] should therefore not be taken as demanding, or even authorizing, public disclosure of a witness' grand jury testimony in every case where he seeks this and the Government consents. It rests on the exercise of a sound discretion under the special circumstances of [each] case." *Id.* at 494 (supplemental opinion).

We are not alone in this view.[3] According to the seminal case on non–6(e) grand jury disclosure, *In re Hastings*, "[t]he district court's belief that it had inherent power beyond the literal wording of Rule 6(e) is amply supported." *Hastings*, 735 F.2d at 1268. Moreover, the *Hastings* court cited *In re Biaggi* with approval for the proposition that "it is certain that a court's power to order

disclosure of grand jury records is not strictly confined to instances spelled out in the rule." *Id.* (citing, *inter alia*, *In re Biaggi*, 478 F.2d 489). And, in concluding its discussion of the proper role of Rule 6(e) as guiding, not fettering, a court's exercise of discretion, the *Hastings* court observed:

> [W]e do not believe that the district court's power to permit the Committee access to the otherwise secret grand jury minutes must stand or fall upon a literal construction of the language of Rule 6(e).
>
> . . . .
>
> Certainly, . . . courts must adhere to Rule 6(e) in "garden variety" petitions for grand jury disclosure. The rule was intended to provide a reliable statement of the law in this area and would be rendered meaningless if departures were freely sanctioned. We assume that courts are not empowered to act outside Rule 6(e) in other than exceptional circumstances consonant with the rule's policy and spirit.

*Id.* at 1269 (finding a judicial committee's investigation into judicial misconduct a judge indicted for, but acquitted of, of accepting bribes to constitute such an "exceptional situation").

We therefore reaffirm the continued vitality of our "special circumstances" test of *Biaggi*, and reject the government's suggestion that we unsettle this area of good law.[4]

---

**3.** Other courts also have held that disclosure is permissible outside of Rule 6(e). *See, e.g., In re Hastings*, 735 F.2d at 1267–68; *In re Grand Jury Proceedings, Miller Brewing Co.*, 687 F.2d 1079, 1088 (7th Cir.1982) (stating, in dictum, that a court may have discretion to disclose grand jury records when there is an extraordinary and compelling need to do so in the interests of justice), *vacated in part*, 717 F.2d 1136 (7th Cir.1983); *In re Special February, 1975 Grand Jury*, 662 F.2d 1232, 1235–36 (7th Cir.1981), *aff'd sub nom. United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983) (stating, in dictum, that a court "in rare situations may have some discretion" to order disclosure in circumstances not covered by Rule 6(e)); *see also In re Grand Jury Proceedings*, 800 F.2d 1293, 1303 (4th Cir. 1986) (holding that the district court did not abuse its discretion by allowing disclosure of grand jury material to the government for a civil suit).

**4.** As for the claim that there is a circuit split on this matter—suggested by the district court's ci-

tation to *In re Petition of Newman*, No. 87–5345 (D.C.Cir. Apr. 20, 1988) (unpublished memorandum), *see In re Petition of Craig*, 942 F.Supp. at 882 n. 1—we first express concern at reliance, for any proposition of law, on an unpublished decision of the District of Columbia Circuit, *see* D.C.Cir. R. 28(c); *see also* 2d Cir. R. § 0.23. Moreover, it is by no means clear that *In re Petition of Newman*, even if it were taken to represent the law of the District of Columbia Circuit, creates such a rift. The *In re Petition of Newman* case was brought to the Supreme Court on a petition of certiorari premised on the creation of a circuit split. In opposing the petition, the Solicitor General emphatically asserted that "[c]ontrary to petitioner's contention, there is no conflict among the circuits on the issue presented in this case. The Court of Appeals for the District of Columbia Circuit has not rejected the 'inherent authority' rationale for disclosure in all cases, as petitioner contends." Brief for the United States in Opposition to Petition for a Writ of Certiorari at 9, *Newman v. United States* (No. 88–548). (Certiorari was denied by the Supreme

## B. The District Court's Holding To Deny Disclosure Outside of Rule 6(e)(3)

The government argues (in the alternative) that the district court's decision not to disclose grand jury testimony was a proper exercise of its discretion. Petitioner disagrees and asserts that the district court abused its discretion in denying his request. We find the government's position to be the more persuasive.

We note at the outset that the discretion of a trial court in deciding whether to make public the ordinarily secret proceedings of a grand jury investigation is one of the broadest and most sensitive exercises of careful judgment that a trial judge can make. *See, e.g., United States v. John Doe, Inc. I,* 481 U.S. 102, 116, 107 S.Ct. 1656, 1664, 95 L.Ed.2d 94 (1987) ("[W]e have repeatedly stressed that wide discretion must be afforded to district court judges in evaluating whether disclosure is appropriate.") (citing *Douglas Oil,* 441 U.S. at 228, 99 S.Ct. at 1677; *id.* at 236–37, 99 S.Ct. at 1680–81 (Stevens, J., dissenting) (addressing generally the broad latitude that district court judges should have in making the discretionary decision whether to disclose grand jury material); *Pittsburgh Plate Glass Co.,* 360 U.S. at 399, 79 S.Ct. at 1240). Coupled with the baseline presumption against disclosure (and the burden on the party seeking to overcome it, *see Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1674), this deference due the district court makes petitioner's burden on appeal heavy indeed.

The special circumstances test of *Biaggi* (like the *Douglas Oil* standard for cases falling within the exceptions listed in Rule 6(e))

emphasizes great flexibility.[5] The thrust of petitioner's appeal is that the district court—at least by his interpretation—refused to be flexible when it, allegedly, declined to consider his "historical interest" argument for releasing the material. He bases this position, in part, upon the court's remark that public interest "alone will not support disclosure outside the strict boundaries of Rule 6(e)." *In re Petition of Craig,* 942 F.Supp. at 883.

Craig reads this statement to mean that the district court turned a deaf ear to historical interest and held, as a matter of law, that one can never justify a need to release grand jury information based on significant public interest. He complains that "[t]his categorical approach—that the public interest in a record can never suffice—is at odds with the *Douglas Oil* balancing test." While we agree with the petitioner that such an inflexible approach, whether or not it is "at odds" with *Douglas Oil,* would be inappropriate,[6] we do not believe that "categorical" accurately characterizes the district court's holding.

The passage in the district court's opinion on which petitioner relies must be taken in context. In making its statement, the district court was responding to petitioner's broad argument that *any* time a public interest is asserted, a trial judge should simply balance the interest in question with the need for secrecy of the particular grand jury. In this regard, the court quite correctly held that "if courts granted disclosure *whenever* the public had an interest in grand jury proceedings, Rule 6(e) would be eviscerated." *In re Petition of Craig,* 942 F.Supp. at 883 (emphasis added).

Court. *See* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989).)

5. In *Douglas Oil,* the Supreme Court articulated a highly flexible "particularized need" test for parties seeking to compel disclosure under Rule 6(e): "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674. Although *Biaggi* preceded *Douglas Oil* and dealt with "special circumstances" beyond the Rule 6(e)(3) ex-

ceptions, we find the Supreme Court's repeated emphasis on flexibility and discretion in *Douglas Oil* and its progeny to be fully consistent with our *Biaggi* decision. And even though the *Douglas Oil* test cannot be carried over directly to "special circumstances" cases (because the *Douglas Oil* test's first prong presumes use of the grand jury material in a subsequent judicial proceeding), it serves as a useful aid to guide our inquiry.

6. While the *Douglas Oil* test advocates balancing, it is not directly apposite to a "special circumstances" case. *See supra* note 5.

Thus, the district court's comment that public interest, without more, cannot permit disclosure must be read simply as the commonplace observation that the "special circumstances" test cannot ·be satisfied by a blanket assertion that the public has an interest .in the information contained in the grand jury transcripts. Indeed, by concluding that "the 'public interest' exception urged by Petitioner [that any garden-variety public interest compels disclosure if it outweighs the need for secrecy in the particular grand jury proceeding in question] would swallow the general rule of secrecy," .the district court made clear that it was not closing off all historical interest arguments under a per se rule.[7]

■ Lest there be any doubt in the matter, however, we today hold that there is nothing in *In re Biaggi*'s "special circumstances" test—despite some dictum that can be read to the contrary—that prohibits historical interest, on its own, from justifying release of grand jury material in an appropriate case.

In *In re Biaggi*, we held that the granting of the defendant's request to release grand jury information, which was not opposed by the government, was permissible even though it did not fit any of the specific provisions of Rule 6(e). Our opinion focussed on the interest of the defendant in waiving secrecy at proceedings that did not give rise to an indictment against him. As a corollary, we made the following comment on the possibility ·of a third party seeking access to the secret material *over the defendant's objection:*

> It follows that if Mr. Biaggi had made no application to the district court, the Government could not have procured disclosure of his grand jury testimony. No matter how much, or how legitimately, the public may want to know whether a candidate for high public office has invoked the privilege against self-incrimination before a grand jury, or has lied about having done so, that interest must generally yield to the larger one of preserving the salutary rule of law embodied in Rule 6(e).... But that is not this case.

*In re Biaggi,* 478 F.2d at 492–93.

■ This comment should not be read for any broad proposition of law disparaging the public's possible interest in disclosure (animated by, for example, historical importance). It is simply a protective reminder that the public's curiosity in a defendant's secret conduct at a grand jury hearing cannot eclipse the right the defendant has to secrecy and overwhelm his objection to public disclosure.[8]

It is, therefore, entirely conceivable that in some situations historical or public interest alone could justify the release of grand jury information. To the extent that the John Wilkes Booth or Aaron Burr conspiracies, for example, led to grand jury investigations, historical interest might by now overwhelm any continued need for secrecy.[9] And to say that a· certain factor—like historical interest—can never suffice as a matter of law misunderstands the fact-intensive nature of

7.  We also note that the court's holding was based on a fact-sensitive analysis of petitioner's case, not simply a·per se dismissal as Craig contends. *See In re Petition of Craig,* 942 F.Supp. at 883 ("Petitioner simply asserts that the public interest *in the case* justifies disclosure.") (emphasis added).

8.  Historical interest is thus distinguishable from journalistic intrigue, public curiosity, or even a subjective importance to family and friends. *Cf.* Brief for the United States in Opposition to Petition for a Writ of Certiorari at 10, *Newman v. United States* (No. 88–548) ("Petitioner does not claim that ... disclosure is necessary ... to correct public misapprehension on a matter of some widespread public concern.... Even if dressed up as a significant project of historical scholarship, requests of the type made by petitioner could not easily be distinguished from journalistic inquiries into subjects of public interest or requests based simply on individual or public curiosity.") (citations omitted).

9.  As far as we can tell, there was no grand jury involving Booth. (He was shot while a fugitive, and his alleged co-conspirators were tried before military tribunals.) *See generally* George S. Bryan, *The Great American Myth* (1940) (chronicling the Lincoln assassination and Booth's life). The Burr conspiracy instead did lead to significant grand jury investigations, including one indictment, but never a conviction. *See* Andrew D. Leipold, *Why Grand Juries Do Not (And Cannot) Protect the Accused,* 80 Cornell L.Rev. 260, 324 n.135 (1995).

the inquiry that is to be conducted. Indeed, the "special circumstances" departure from Rule 6(e) is simply incompatible with per se rules and absolutes.

■ Mindful that there is no talismanic formula or rigid set of prerequisites, we offer the following non-exhaustive list of factors that a trial court might want to consider when confronted with these highly discretionary and fact-sensitive "special circumstances" motions: (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.[10]

■ Each of these contextual factors benefits from further elaboration. For example, the identity of the party seeking disclosure should, we think, carry great weight. And if a third-party stranger wishes to obtain release of data about secret meetings over the objection of the defendant, who, perhaps, was never indicted by the grand jury, then the trial judge should be extremely hesitant to grant release of the grand jury material. *Cf. In re Biaggi*, 478 F.2d at 492–93 ("[I]f Mr. Biaggi had made no application to the district court, the Government [on behalf of the pub-

lic] could not have procured disclosure of his grand jury testimony.") (dictum).

■ Similarly, the government's position should be paid considerable heed. If the government supports a motion for disclosure, that should serve as a preliminary indication that the need for secrecy is not especially strong. *See, e.g., id.* at 493 (suggesting that if the government permits disclosure, it waives the need for secrecy to protect grand jurors). But its position is not dispositive. Government support cannot "confer" disclosure, nor can government opposition preclude it.

The reasons why the otherwise secret information is being sought should be explored in some detail. Thus, far from being impermissible, an argument that significant historical interest militates in favor of release is totally appropriate and even weighty. Moreover, the extent of similarity between the reasons underlying the request outside of Rule 6(e) to those grounds that justify disclosure under the existing exceptions listed in Rule 6(e) is highly germane. It is no accident that the *Hastings* court, in allowing the release of the grand jury material, emphasized the quasi-judicial nature of the judicial misconduct committee. For this was reminiscent of the "related judicial proceedings" exception under Rule 6(e)(3)(C)(i). *See In re Hastings*, 735 F.2d at 1271.

The specificity of the data sought is significant in at least two ways. First, there are obvious differences between releasing one witness' testimony, the full transcript, or merely the minutes of the proceeding. And, second, it is highly relevant whether the dis-

---

10. Consideration of factors of this kind is fully consistent with the Supreme Court's holding in *Douglas Oil.* In articulating broad guidelines for instructing lower courts on the exercise of discretion within the confines of Rule 6(e), the Court admonished that while the burden must always be on the party seeking disclosure, that burden is, necessarily, a contextual one. "[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Douglas Oil*, 441 U.S. at 223, 99 S.Ct. at 1674. The burden, though greater when the issue, as in the case before us, involves the exercise of discretion outside the bounds of Rule

6(e), is equally contextual. The greater burden is just one reason why petitioner's contention that the district court failed to conduct the test "prescribed" by *Douglas Oil* cannot stand. When grand jury material information is released under one of the Rule 6(e) exceptions, the participants are, at least at some level, on notice about the possibility of future use of their testimony. When the material is released outside the confines of Rule 6(e), this notice vanishes, and so a court must apply extra vigilance. A more lenient test appropriate for Rule 6(e) cases cannot simply be applied to non–6(e) cases as well. That is why we use the label "special circumstances" for cases outside of Rule 6(e).

closure is general or limited to a specified number of people under special circumstances. *Cf. id.* at 1274–75 (permitting disclosure when the material would be seen only by a limited number of judges and under restricted conditions).

The timing of the request remains one of the most crucial elements. Time matters in several ways. First, if historical interest in a specific case has persisted over a number of years, that serves as an important indication that the public's interest in release of the information is substantial. (Hence the hypotheticals involving John Wilkes Booth and Aaron Burr.) Second, the passage of time erodes many of the justifications for continued secrecy. *See Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674 (noting that the interests in grand jury secrecy are reduced after the grand jury has ended its activities). Third, the passage of time eventually, and inevitably, brings about the death of the principal parties involved in the investigations, as well as that of their immediate families. And the continued existence and vulnerability of such parties is, of itself, a factor that a court should consider. *See In re Petition of May,* No. M 11–189, at 3–4 (S.D.N.Y. Jan. 20, 1987) (unpublished memorandum and order) (concluding that, in light of the death of the principals, "we find a considerable public interest in disclosure and no interest in secrecy").

Finally, the extent to which the grand jury material in a particular case has been made public is clearly relevant because even partial previous disclosure often undercuts many of the reasons for secrecy. Accordingly, several courts have emphasized this factor. *See, e.g., id.* at 3 (permitting disclosure because (among other reasons) there had "been extensive prior disclosure of the grand jury proceedings"); *see also In re North,* 16 F.3d 1234, 1244–45 (D.C.Cir.1994) (finding that widespread media release might compromise secrecy to the point that Rule 6(e) would no longer prohibit the release of certain records).

In the end, however, all of these factors and their precise significance must be evaluated in the context of the specific case by the court to which the petition has been properly brought. We therefore turn to the instant case.

We note first that the district judge conducted a thorough exploration of the various reasons in favor of disclosure at the motion hearing. (Indeed, the court expressed surprise that the government was opposing the request for disclosure.) The court also compared—and distinguished—petitioner's case from others in which disclosure had been allowed. For example, it emphasized the fact that unlike *In re Petition of May,* this current case was not one in which "the conduct of the grand jury had been the subject of litigation, and there had already been extensive prior disclosure of the grand jury proceedings.'" *In re Petition of Craig,* 942 F.Supp. at 883 (quoting *In re Petition of May,* No. M. 11–189, at 3). In distinguishing *In re Petition of May,* the district court also was clearly aware of the fact that, unlike the situation in *May,* the current disclosure would involve some witnesses who are still alive. Under the circumstances, we conclude that its ultimate decision that the public interest and other factors involved in petitioner's case did not justify disclosure was not an abuse of discretion.[11]

"We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil,* 441 U.S. at 218, 99 S.Ct. at 1672. At the same time, "a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." *Id.* at 223, 99 S.Ct. at 1674 *quoted in In re Hastings,* 735 F.2d at 1273. We cannot say that the district court abused this "substantial discretion" in considering, and denying, petitioner's motion for disclosure. Its judgment is therefore AFFIRMED.

---

11. Although the court held that petitioner's interests in disclosure were currently insufficient to justify release of the grand jury information, nothing in its opinion (or ours) should be read to suggest that future developments might not change matters.