WILSON, Circuit Judge:
*707 In 1946, a crowd of people in Walton County, Georgia gathered as two African American couples were dragged from a car and shot multiple times.[1] Many consider this event, known as the Moore's Ford Lynching, to be the last mass lynching in American history. Racial tensions in Georgia were high. African American citizens were allowed to vote in a Georgia Democratic Party primary for the first time that year.[2] The murders occurred shortly after the primary and immediately garnered national media attention. National outrage, including condemnation from then Special Counsel to the NAACP Thurgood Marshall, ultimately led President Harry Truman to order an FBI investigation. In late 1946, a district court judge in Georgia convened a grand jury. But after sixteen days of witness testimony, no one was ever charged. The case remains unsolved.
Over seven decades later, Anthony Pitch, an author and historian, petitioned the Middle District of Georgia for an order unsealing the grand jury transcripts. The district court granted his request. The government now appeals, arguing the district court abused its discretion in unsealing the transcripts. After careful review and with the benefit of oral argument, we affirm.
I. Factual and Procedural Background
Anthony Pitch wrote a book about the Moore's Ford Lynching. In 2014, while researching the event for the book, Pitch petitioned the Middle District of Georgia to unseal the federal grand jury records related to the incident. Initially, the district court denied the petition without prejudice because Pitch did not present evidence that the records even existed. Three years later, Pitch renewed his petition, arguing that his investigation revealed that the records were at the National Archives in Washington, D.C. The district court ordered the government to produce the records for in camera inspection. The government filed the transcripts under seal. And against the objections of the government, the district court ordered the transcripts be unsealed. To do so, the district court relied on its inherent authority under In re Petition to Inspect & Copy Grand Jury Materials (Hastings) , 735 F.2d 1261 (11th Cir. 1984).
On appeal, the government argues first, that the district court lacked inherent authority to disclose the transcripts, and second, even assuming the district court had inherent authority, the court exceeded that authority by permitting disclosure based solely on the historical significance of the Moore's Ford Lynching. Because we are bound by our decision in Hastings , we affirm. See Kondrat'yev v. City of Pensacola, Fla. , 903 F.3d 1169, 1174 (11th Cir. 2018) (per curiam) ("[O]ur precedent-in particular, our precedent about precedent-is clear: '[W]e are not at liberty to disregard binding case law that is ... closely on point and has been only weakened, rather than directly overruled, by the Supreme Court.' " (quoting Fla. League of Prof'l Lobbyists, Inc. v. Meggs , 87 F.3d 457, 462 (11th Cir. 1996) ) ).
II. Power of District Courts to Disclose Grand Jury Records
The government argues that the district court erred in invoking its inherent *708 authority to disclose the grand jury records. We review a district court's disclosure of grand jury transcripts for abuse of discretion. United States v. Aisenberg , 358 F.3d 1327, 1338 (11th Cir. 2004). A court abuses its discretion when it commits an error of law. United States v. Brown , 332 F.3d 1341, 1343 (11th Cir. 2003).
A. Statutory Authority to Disclose Grand Jury Records
Grand jury secrecy is "an integral part of our criminal justice system." Blalock v. United States , 844 F.2d 1546, 1555 (11th Cir. 1988) (per curiam). Even after an investigation has ended, grand jury proceedings generally remain secret. "The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." United States v. Procter & Gamble Co. , 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). Federal Rule of Criminal Procedure 6(e) codifies the general rule prohibiting the disclosure of grand jury records. Rule 6(e) requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings ... be kept under seal ... to prevent the unauthorized disclosure of a matter occurring before a grand jury." FED. R. CRIM. P. 6(e)(6).
Rule 6(e) also codifies a list of exceptions to its general rule of secrecy. The only enumerated exception available to a party other than the government or a party in the grand jury proceeding is Rule 6(e)(3)(E)(i), which allows a court to authorize disclosure of grand jury records "preliminarily to or in connection with a judicial proceeding." A party invoking this exception must prove that "the material they seek is needed to avoid a possible injustice in another court proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Douglas Oil Co. of Ca. v. Petrol Stops NW , 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). Pitch agrees that he cannot benefit from this exception because the grand jury records he sought were not necessary in "another court proceeding."
B. Inherent Authority to Disclose Grand Jury Records
We have recognized that district courts retain "inherent power beyond the literal wording of Rule 6(e)" to disclose grand jury material not otherwise covered by the exceptions. Hastings , 735 F.2d at 1268.[3] "[T]he exceptions permitting disclosure *709 were not intended to ossify the law, but rather are subject to development by the courts in conformance with the Rule's general rule of secrecy." Id. at 1269 ; accord United States v. Aisenberg , 358 F.3d 1327, 1347 (11th Cir. 2004) ("Although Rule 6(e)(3) enumerates the exceptions to the traditional rule of grand jury secrecy, the Supreme Court and this Court have recognized that the district courts have inherent power beyond the literal wording of Rule 6(e)(3) to disclose grand jury material and that Rule 6(e)(3) is but declaratory of that authority."); In re Craig , 131 F.3d 99, 103 (2d Cir. 1997) ("[P]ermitting departures from Rule 6(e) is fully consonant with the role of the supervising court and will not unravel the foundations of secrecy upon which the grand jury is premised."); Carlson v. United States , 837 F.3d 753, 763 (7th Cir. 2016) (" Rule 6(e) is but declaratory of the long-standing principle that disclosure of grand jury materials is committed to the discretion of the trial court.") (internal quotation marks omitted).
"This is not to say [ Rule 6(e) ] is not normally controlling. It is." Hastings , 735 F.2d at 1268. Petitioners and district courts cannot rely on inherent authority to circumvent a plainly applicable and unambiguous enumerated Rule 6(e) exception. See Aisenberg , 358 F.3d 1327 (declining to allow petitioners to rely on inherent authority because petitioners' request was "preliminarily to or in connection with a judicial proceeding" under the Rule 6(e)(3)(E)(i) exception); cf. Carlisle v. United States , 517 U.S. 416, 426, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (holding that a district court could not use inherent authority to extend a plain and unambiguous Rule of Criminal Procedure that limited district court's authority to enter a judgment of acquittal to seven days). The upshot, then, is a district court may only invoke its inherent authority to disclose grand jury records when an enumerated Rule 6(e) exception does not directly govern the requested disclosure.[4] Both the government and Pitch agree that none of the exceptions in Rule 6(e) apply, which allows Pitch to survive this threshold inquiry.
III. The District Court's Exercise of Discretion in the Present Case
We must now decide whether the facts presented here constitute "exceptional circumstances" that allow a district court to employ its inherent authority to disclose grand jury records outside the confines of Rule 6(e). The petitioner has the burden of proving that "exceptional circumstances" exist. See Hastings , 735 F.2d at 1272-73.
A. The "Exceptional Circumstances" Test
"[W]hile district courts have inherent authority to act outside Rule 6(e)(3), any inherent disclosure authority is exceedingly narrow ...." Aisenberg , 358 F.3d at 1347. "[C]ourts are not empowered to act outside Rule 6(e) in other than exceptional circumstances consonant with the rule's policy and spirit." Hastings , 735 F.2d at 1269. Exceptional circumstances exist when the need for disclosure outweighs the public interest in continued secrecy.
*710 Id. at 1272, 1275 ; see also Douglas Oil , 441 U.S. at 223, 99 S.Ct. at 1275 ("[T]he court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and standards announced by this Court.").
On one side of the scale is the well-established public interest in secrecy of grand jury records. Nondisclosure of grand jury records "prevent[s] the escape of those whose indictment may be contemplated," ensures "the utmost freedom to the grand jury in its deliberations," prevents "tampering with the witnesses who may testify before the grand jury," encourages "free and untrammeled disclosures by persons who have information" about the commission of crimes, and protects the "innocent accused who is exonerated" from public disclosure that he had been under investigation. United States v. Procter & Gamble Co. , 356 U.S. 677, 682 n.6, 78 S.Ct. 983, 986 n.6, 2 L.Ed.2d 1077 (1958). Given the importance of grand jury secrecy, the burden on the petitioner is high.
The weight on the other side of the scale-the need for disclosure-requires a fact intensive analysis that depends on the competing interests in a particular case. In Hastings , for example, we held that "the petition of a judicial investigating committee is the kind of request which, in proper circumstances, can trigger a district court's inherent power to release grand jury minutes." Hastings , 735 F.2d at 1269. In Hastings , we stated that "courts must adhere to Rule 6(e) in 'garden variety' petitions for grand jury disclosure," recognizing that the Rule "would be rendered meaningless if departures were freely sanctioned." Id . We emphasized there, as we do here, that "courts are not empowered to act outside Rule 6(e) in other than exceptional circumstances ." Id . (emphasis added). In Hastings , it was "highly significant that the grand jury materials in question were sought ... pursuant to express statutory authority" of the judicial investigating committee. Id. at 1269-70. The court also considered that "a matter of great societal importance"-namely, "the important public interest in the integrity and independence of the judiciary"-was implicated. Id. Finally, while no enumerated Rule 6(e) exception governed the disclosure, the requested disclosure was analogous to those permitted by the Rule. Id. at 1271-72.
B. The Exception for Matters of Exceptional Historical Significance
Under the proper circumstances, grand jury records on a matter of exceptional historical significance may trigger a district court's inherent authority to disclose them. Our sister circuits have developed a multi-factor inquiry for applying the balancing test set forth in Hastings to the disclosure of historically significant grand jury records.[5] In In re Petition of Craig , the Second Circuit outlined a "non-exhaustive list of factors that a trial court *711 might want to consider when confronted with these highly discretionary and fact-sensitive" petitions:
(i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material-either permissibly or impermissibly-has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.
131 F.3d 99, 106 (2d Cir. 1997). But "there is no talismanic formula or rigid set of prerequisites," and the specific circumstances of a case may lead to additional relevant factors. Id.
The first two Craig factors ask us to consider the interests of the parties: the petitioner, the government, and the defendant in the grand jury proceeding. First, the petitioner, Pitch, is an accomplished author and historian. He has published many historical works, including a book about the Moore's Ford Lynching. As we discussed, while not dispositive, the government has a significant and well-established interest in grand jury secrecy that will always weigh against disclosure. See Procter & Gamble , 356 U.S. at 682 n.6, 78 S.Ct. at 986 n.6. Finally, no defendant in the Moore's Ford grand jury proceeding has objected to disclosure. See Craig , 131 F.3d at 106 ("And if a third-party stranger wishes to obtain release of data about secret meetings over the objection of the defendant, who, perhaps, was never indicted by the grand jury, then the trial judge should be extremely hesitant to grant release of the grand jury material.").
The third, fourth, and seventh Craig factors concern the historical importance of the information being sought. Pitch seeks disclosure for a legitimate, scholarly purpose: to research, write, and educate the public about a significant event in the civil rights movement. Cf. Globe Newspaper Co. v. Sup. Ct. for Norfolk Cty. , 457 U.S. 596, 604, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982) (discussing the constitutional right of the public to access records from criminal trials and reasoning that this right "serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government" by protecting "the free discussion of governmental affairs"); In re Petition of Kutler , 800 F.Supp.2d 42, 48 (D.D.C. 2011) (reasoning that "[t]he disclosure of President Nixon's grand jury testimony would likely enhance the existing historical record, foster further scholarly discussion, and improve the public's understanding of a significant historical event.").
Historical importance is objective. It must be distinguished from "journalistic intrigue, public curiosity, or even a subjective importance to family and friends." Craig , 131 F.3d at 105 n.8. The Moore's Ford Lynching is clearly an event of exceptional historical significance. Compared to the journalist or the family member of a victim that seeks access to the details of a salacious unsolved crime, the Moore's Ford Lynching is historically significant because it is closely tied to the national civil rights movement. Many consider it to be the last mass lynching in American history. There has been, and continues to be, national media attention and widespread public interest in the murders. According to Pitch, *712 the Moore's Ford Lynching is credited as a catalyst to the President's Committee on Civil Rights, which President Harry Truman created by executive order the same week the Moore's Ford grand jury was convened. See Exec. Order No. 9808, 11 Fed. Reg. 14153 (Dec. 5, 1946). It would be difficult to deny-and the government does not attempt to do so on appeal-that the Moore's Ford Lynching is, objectively, an exceptionally significant event in American history.
Despite considerable public interest, the details are sparse. Even with a crowd of witnesses, no one was prosecuted and no public proceedings were held.[6] For this reason, Pitch sought disclosure of the entire transcript from the grand jury proceedings. As the district court did here, courts should give any party opposing disclosure the opportunity to object to specific portions of the records. The district court should engage in the same balancing test to determine whether, and how much, those portions should be redacted or omitted. See Douglas Oil , 441 U.S. at 223, 99 S.Ct. at 1675 ("And if disclosure is ordered, the court may include protective limitations on the use of the disclosed material ...."); Hastings , 735 F.2d at 1274-75 (approving the district court's "protective conditions").
The interest in continued secrecy is also undercut if details in the records have been publicized. See Craig , 131 F.3d at 107 ; cf. In re North , 16 F.3d 1234, 1244-45 (D.C. Cir. 1994) (noting that widespread media release might undercut interest in secrecy to point where Rule 6(e) would not prohibit disclosure). Here, this factor weighs against disclosure. There is no indication that any portion of the grand jury records has been made public, permissibly or not.
Finally, the passage of time will often be the touchstone of our inquiry. Even if other factors weigh strongly in favor of disclosure, an insufficient passage of time since the grand jury proceedings took place is fatal to the petitioner's request for disclosure. "[T]he passage of time erodes many of the justifications for continued secrecy." Craig , 131 F.3d at 107. The sufficiency of the passage of time must be viewed in light of the policy underlying grand jury secrecy: to protect the important truth-seeking function of grand juries.[7] As a result, the passage of time generally must be long enough that the principal parties to the investigation-the suspects and witnesses-and their immediate family members have likely died, and that there is no reasonable probability that the government would make arrests based on the disclosed information. See id.
Pitch requested the Moore's Ford grand jury transcripts seventy-one years after the grand jury proceeding took place.[8] No one has been charged, no one is currently under active investigation, and the principal parties to the investigation were adults at the time of the grand jury proceeding. Under these circumstances, seventy years is at or near the bounds of sufficient passage of time. There is no indication that any witnesses, suspects, or their immediate family members are alive to be intimidated, persecuted, or arrested. Like the *713 court in Craig , we also find it significant that the historical interest in the Moore's Ford Lynching has persisted over time. See Craig , 131 F.3d at 107. Although it now seems nearly impossible that anyone will ever be charged, the investigation has been reopened many times, and the event has inspired annual reenactments and several books and articles spanning seven decades.
Balancing these competing interests, the district court did not err in holding that the interest in disclosure outweighed the interest in continued secrecy.
IV. Conclusion
"We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," but "a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." Douglas Oil , 441 U.S. at 218, 99 S.Ct. at 1672. Given our binding decision in Hastings , and the truly "exceptional circumstances" presented by the Moore's Ford Lynching, we cannot say that the district court abused its substantial discretion in ordering the release of the grand jury transcripts. The judgment of the district court is affirmed.
AFFIRMED.

There are differing accounts on the number of shots and the number of people present. Estimates suggest that between thirty and one hundred people were present.

The Fifth Circuit had recently held that the Georgia Democratic Party's all-white primary system was unconstitutional. Chapman v. King , 154 F.2d 460 (5th Cir. 1946), cert. denied , 327 U.S. 800, 66 S.Ct. 905, 90 L.Ed. 1025 (1946).

The government argues that we are no longer bound by Hastings because the Supreme Court has rejected its reasoning. In Carlisle v. United States , the Supreme Court held that "[w]hatever the scope of [a court's] 'inherent power,' ... it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Civil Procedure." 517 U.S. 416, 426, 116 S.Ct. 1460, 1466, 134 L.Ed.2d 613 (1996) (emphasis added). This passage must be read in context. Carlisle held that a district court cannot directly contradict an applicable and unambiguous Federal Rule of Criminal Procedure by invoking its inherent authority. In Carlisle , the Supreme Court held that a district court could not rely on inherent authority to enter a judgment of acquittal after the seven-day time limit prescribed by Rule 29(c) had expired. Id. at 426, 116 S.Ct. 1460, 1466. The district court there "contradicted the plain language" of the Rule by "effectively annul[ing]" the seven-day time limit prescribed by Congress. Id. We do not read Carlisle to prohibit the exercise of that authority in "exceptional circumstances consonant with the rule's policy and spirit." Hastings , 735 F.2d at 1269 ; cf. United States v. Aisenberg , 358 F.3d 1327 (11th Cir. 2004) (holding that a petitioner cannot circumvent the plain text of an applicable rule or the Douglas Oil test by asserting inherent authority). "[W]e are not at liberty to disregard binding case law that is ... closely on point and has been only weakened, rather than directly overruled, by the Supreme Court." Kondrat'yev , 903 F.3d at 1174 (internal quotation marks omitted). We are thus bound by Hastings .

This is merely derivative of the "cautionary principle" that courts will not "lightly assume that Congress has intended to depart from established principles such as the scope of a court's inherent power." Carlisle , 517 U.S. at 426, 116 S.Ct. at 1466 (quoting Chambers v. NASCO, Inc. , 501 U.S. 32, 47, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991) ).

At the time of this opinion, two circuits have addressed the issue. Both held that district courts have inherent authority to disclose historically significant grand jury records. See In re Petition of Craig , 131 F.3d 99, 106 (2d Cir. 1997) ; Carlson v. United States , 837 F.3d 753 (7th Cir. 2016). While not specifically addressing disclosure for historical significance, the Eighth Circuit has expressed doubt that district courts have any inherent authority to act outside the enumerated Rule 6(e) exceptions. See United States v. McDougal , 559 F.3d 837, 841 (8th Cir. 2009). Finally, the D.C. Circuit has acknowledged the "general agreement" that district courts have inherent authority to disclose grand jury material. See Haldeman v. Sirica , 501 F.2d 714, 715 (D.C. Cir. 1974). Whether that inherent authority extends to disclosure for historical significance is pending in the D.C. Circuit. See McKeever v. Sessions , No. 17-5149 (D.C. Cir. filed June 14, 2017).

According to Pitch, the FBI interviewed over 2,700 people and subpoenaed over 100 witnesses to testify in front of the grand jury.

See generally United States v. Procter & Gamble Co. , 356 U.S. 677, 682 n.6, 78 S.Ct. 983, 986 n.6, 2 L.Ed.2d 1077 (1958).

Pitch first requested the records three years earlier, in 2014, which the district court denied. The government appeals from the district court's grant of Pitch's second petition, which he filed in 2017.