[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15016

_____

D.C. Docket No. 5:14-mc-00002-MTT

ANTHONY S. PITCH,

Plaintiff - Appellee,

versus

UNITED STATES OF AMERICA,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 11, 2019)

Before WILSON and JORDAN, Circuit Judges, and GRAHAM,* District Judge.

WILSON, Circuit Judge:

_____

* Honorable James L. Graham, United States District Judge for the Southern District of Ohio,
sitting by designation.

In 1946, a crowd of people in Walton County, Georgia gathered as two African American couples were dragged from a car and shot multiple times.[1] Many consider this event, known as the Moore's Ford Lynching, to be the last mass lynching in American history. Racial tensions in Georgia were high. African American citizens were allowed to vote in a Georgia Democratic Party primary for the first time that year.[2] The murders occurred shortly after the primary and immediately garnered national media attention. National outrage, including condemnation from then Special Counsel to the NAACP Thurgood Marshall, ultimately led President Harry Truman to order an FBI investigation. In late 1946, a district court judge in Georgia convened a grand jury. But after sixteen days of witness testimony, no one was ever charged. The case remains unsolved.

Over seven decades later, Anthony Pitch, an author and historian, petitioned the Middle District of Georgia for an order unsealing the grand jury transcripts. The district court granted his request. The government now appeals, arguing the district court abused its discretion in unsealing the transcripts. After careful review and with the benefit of oral argument, we affirm.

---

[1] There are differing accounts on the number of shots and the number of people present. Estimates suggest that between thirty and one hundred people were present.

[2] The Fifth Circuit had recently held that the Georgia Democratic Party's all-white primary system was unconstitutional. *Chapman v. King*, 154 F.2d 460 (5th Cir. 1946), *cert. denied*, 327 U.S. 800, 66 S. Ct. 905 (1946).

2

## I. Factual and Procedural Background

Anthony Pitch wrote a book about the Moore's Ford Lynching. In 2014, while researching the event for the book, Pitch petitioned the Middle District of Georgia to unseal the federal grand jury records related to the incident. Initially, the district court denied the petition without prejudice because Pitch did not present evidence that the records even existed. Three years later, Pitch renewed his petition, arguing that his investigation revealed that the records were at the National Archives in Washington, D.C. The district court ordered the government to produce the records for in camera inspection. The government filed the transcripts under seal. And against the objections of the government, the district court ordered the transcripts be unsealed. To do so, the district court relied on its inherent authority under *In re Petition to Inspect & Copy Grand Jury Materials (Hastings)*, 735 F.2d 1261 (11th Cir. 1984).

On appeal, the government argues first, that the district court lacked inherent authority to disclose the transcripts, and second, even assuming the district court had inherent authority, the court exceeded that authority by permitting disclosure based solely on the historical significance of the Moore's Ford Lynching. Because we are bound by our decision in *Hastings*, we affirm. *See Kondrat'yev v. City of Pensacola, Fla.*, 903 F.3d 1169, 1174 (11th Cir. 2018) (per curiam) ("[O]ur precedent—in particular, our precedent about precedent—is clear: '[W]e are not at

3

liberty to disregard binding case law that is . . . closely on point and has been only weakened, rather than directly overruled, by the Supreme Court.'" (quoting *Fla. League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 462 (11th Cir. 1996))).

## II. Power of District Courts to Disclose Grand Jury Records

The government argues that the district court erred in invoking its inherent authority to disclose the grand jury records. We review a district court's disclosure of grand jury transcripts for abuse of discretion. *United States v. Aisenberg*, 358 F.3d 1327, 1338 (11th Cir. 2004). A court abuses its discretion when it commits an error of law. *United States v. Brown*, 332 F.3d 1341, 1343 (11th Cir. 2003).

### A. Statutory Authority to Disclose Grand Jury Records

Grand jury secrecy is "an integral part of our criminal justice system." *Blalock v. United States*, 844 F.2d 1546, 1555 (11th Cir. 1988) (per curiam). Even after an investigation has ended, grand jury proceedings generally remain secret. "The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S. Ct. 983, 986 (1958). Federal Rule of Criminal Procedure 6(e) codifies the general rule prohibiting the disclosure of grand jury records. Rule 6(e) requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings . . . be kept under seal . . .

4

to prevent the unauthorized disclosure of a matter occurring before a grand jury."

FED. R. CRIM. P. 6(e)(6).

Rule 6(e) also codifies a list of exceptions to its general rule of secrecy.  The

only enumerated exception available to a party other than the government or a

party in the grand jury proceeding is Rule 6(e)(3)(E)(i), which allows a court to

authorize disclosure of grand jury records "preliminarily to or in connection with a

judicial proceeding."  A party invoking this exception must prove that "the

material they seek is needed to avoid a possible injustice in another court

proceeding, that the need for disclosure is greater than the need for continued

secrecy, and that their request is structured to cover only material so needed."

*Douglas Oil Co. of Ca. v. Petrol Stops NW*, 441 U.S. 211, 222, 99 S. Ct. 1667,

1674 (1979).  Pitch agrees that he cannot benefit from this exception because the

grand jury records he sought were not necessary in "another court proceeding."

### B. Inherent Authority to Disclose Grand Jury Records

We have recognized that district courts retain "inherent power beyond the

literal wording of Rule 6(e)" to disclose grand jury material not otherwise covered

by the exceptions.  *Hastings*, 735 F.2d at 1268.[3]  "[T]he exceptions permitting

---

[3] The government argues that we are no longer bound by *Hastings* because the Supreme Court
has rejected its reasoning.  In *Carlisle v. United States*, the Supreme Court held that "[w]hatever
the scope of [a court's] 'inherent power,' . . . it does not include the power to develop rules that
*circumvent* or *conflict* with the Federal Rules of Civil Procedure."  517 U.S. 416, 426, 116 S. Ct.
1460, 1466 (1996) (emphasis added).  This passage must be read in context.  *Carlisle* held that a
district court cannot directly contradict an applicable and unambiguous Federal Rule of Criminal

disclosure were not intended to ossify the law, but rather are subject to development by the courts in conformance with the Rule's general rule of secrecy." *Id.* at 1269; *accord United States v. Aisenberg*, 358 F.3d 1327, 1347 (11th Cir. 2004) ("Although Rule 6(e)(3) enumerates the exceptions to the traditional rule of grand jury secrecy, the Supreme Court and this Court have recognized that the district courts have inherent power beyond the literal wording of Rule 6(e)(3) to disclose grand jury material and that Rule 6(e)(3) is but declaratory of that authority."); *In re Craig*, 131 F.3d 99, 103 (2d Cir. 1997) ("[P]ermitting departures from Rule 6(e) is fully consonant with the role of the supervising court and will not unravel the foundations of secrecy upon which the grand jury is premised."); *Carlson v. United States*, 837 F.3d 753, 763 (7th Cir. 2016) ("Rule 6(e) is but declaratory of the long-standing principle that disclosure of grand jury materials is committed to the discretion of the trial court.") (internal quotation marks omitted).

---

Procedure by invoking its inherent authority. In *Carlisle*, the Supreme Court held that a district court could not rely on inherent authority to enter a judgment of acquittal after the seven-day time limit prescribed by Rule 29(c) had expired. *Id.* at 426. The district court there "contradicted the plain language" of the Rule by "effectively annul[ing]" the seven-day time limit prescribed by Congress. *Id.* We do not read *Carlisle* to prohibit the exercise of that authority in "exceptional circumstances consonant with the rule's policy and spirit." *Hastings*, 735 F.2d at 1269; *cf. United States v. Aisenberg*, 358 F.3d 1327 (11th Cir. 2004) (holding that a petitioner cannot circumvent the plain text of an applicable rule or the *Douglas Oil* test by asserting inherent authority). "[W]e are not at liberty to disregard binding case law that is . . . closely on point and has been only weakened, rather than directly overruled, by the Supreme Court." *Kondrat'yev*, 903 F.3d at 1174 (internal quotation marks omitted). We are thus bound by *Hastings*.

"This is not to say [Rule 6(e)] is not normally controlling.  It is." *Hastings*, 735 F.2d at 1268.  Petitioners and district courts cannot rely on inherent authority to circumvent a plainly applicable and unambiguous enumerated Rule 6(e) exception.  *See Aisenberg*, 358 F.3d 1327 (declining to allow petitioners to rely on inherent authority because petitioners' request was "preliminarily to or in connection with a judicial proceeding" under the Rule 6(e)(3)(E)(i) exception); *cf. Carlisle v. United States*, 517 U.S. 416, 426 (1996) (holding that a district court could not use inherent authority to extend a plain and unambiguous Rule of Criminal Procedure that limited district court's authority to enter a judgment of acquittal to seven days).  The upshot, then, is a district court may only invoke its inherent authority to disclose grand jury records when an enumerated Rule 6(e) exception does not directly govern the requested disclosure.[4]  Both the government and Pitch agree that none of the exceptions in Rule 6(e) apply, which allows Pitch to survive this threshold inquiry.

### III.  The District Court's Exercise of Discretion in the Present Case

We must now decide whether the facts presented here constitute "exceptional circumstances" that allow a district court to employ its inherent authority to disclose grand jury records outside the confines of Rule 6(e).  The

---

[4] This is merely derivative of the "cautionary principle" that courts will not "lightly assume that Congress has intended to depart from established principles such as the scope of a court's inherent power." *Carlisle*, 517 U.S. at 426, 116 S. Ct. at 1466 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47, 111 S. Ct. 2123, 2134 (1991)).

7

petitioner has the burden of proving that "exceptional circumstances" exist.  *See Hastings*, 735 F.2d at 1272–73.

## A.  The "Exceptional Circumstances" Test

"[W]hile district courts have inherent authority to act outside Rule 6(e)(3), any inherent disclosure authority is exceedingly narrow . . . ."  *Aisenberg*, 358 F.3d at 1347.  "[C]ourts are not empowered to act outside Rule 6(e) in other than exceptional circumstances consonant with the rule's policy and spirit."  *Hastings*, 735 F.2d at 1269.  Exceptional circumstances exist when the need for disclosure outweighs the public interest in continued secrecy.  *Id.* at 1272, 1275; *see also Douglas Oil*, 441 U.S. at 223, 99 S. Ct. at 1275 ("[T]he court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and standards announced by this Court.").

On one side of the scale is the well-established public interest in secrecy of grand jury records.  Nondisclosure of grand jury records "prevent[s] the escape of those whose indictment may be contemplated," ensures "the utmost freedom to the grand jury in its deliberations," prevents "tampering with the witnesses who may testify before the grand jury," encourages "free and untrammeled disclosures by persons who have information" about the commission of crimes, and protects the "innocent accused who is exonerated" from public disclosure that he had been under investigation.  *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682

8

n.6, 78 S. Ct. 983, 986 n.6 (1958).  Given the importance of grand jury secrecy, the burden on the petitioner is high.

The weight on the other side of the scale—the need for disclosure—requires a fact intensive analysis that depends on the competing interests in a particular case.  In *Hastings*, for example, we held that "the petition of a judicial investigating committee is the kind of request which, in proper circumstances, can trigger a district court's inherent power to release grand jury minutes."  *Hastings*, 735 F.2d at 1269.  In *Hastings*, we stated that "courts must adhere to Rule 6(e) in 'garden variety' petitions for grand jury disclosure," recognizing that the Rule "would be rendered meaningless if departures were freely sanctioned."  *Id*.  We emphasized there, as we do here, that "courts are not empowered to act outside Rule 6(e) in other than *exceptional circumstances*."  *Id*. (emphasis added).  In *Hastings*, it was "highly significant that the grand jury materials in question were sought . . . pursuant to express statutory authority" of the judicial investigating committee.  *Id.* at 1269–70.  The court also considered that "a matter of great societal importance"—namely, "the important public interest in the integrity and independence of the judiciary"—was implicated.  *Id.*  Finally, while no enumerated Rule 6(e) exception governed the disclosure, the requested disclosure was analogous to those permitted by the Rule.  *Id.* at 1271–72.

9

### B.  The Exception for Matters of Exceptional Historical Significance

Under the proper circumstances, grand jury records on a matter of exceptional historical significance may trigger a district court's inherent authority to disclose them.  Our sister circuits have developed a multi-factor inquiry for applying the balancing test set forth in *Hastings* to the disclosure of historically significant grand jury records.[5]  In *In re Petition of Craig*, the Second Circuit outlined a "non-exhaustive list of factors that a trial court might want to consider when confronted with these highly discretionary and fact-sensitive" petitions:

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the

---

[5] At the time of this opinion, two circuits have addressed the issue.  Both held that district courts have inherent authority to disclose historically significant grand jury records.  *See In re Petition of Craig*, 131 F.3d 99, 106 (2d Cir. 1997); *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016).  While not specifically addressing disclosure for historical significance, the Eighth Circuit has expressed doubt that district courts have any inherent authority to act outside the enumerated Rule 6(e) exceptions.  *See United States v. McDougal*, 559 F.3d 837, 841 (8th Cir. 2009).  Finally, the D.C. Circuit has acknowledged the "general agreement" that district courts have inherent authority to disclose grand jury material.  *See Haldeman v. Sirica*, 501 F.2d 714, 715 (D.C. Cir. 1974).  Whether that inherent authority extends to disclosure for historical significance is pending in the D.C. Circuit.  *See McKeever v. Sessions*, No. 17-5149 (D.C. Cir. filed June 14, 2017).

additional need for maintaining secrecy in the particular case in question.

131 F.3d 99, 106 (2d Cir. 1997).  But "there is no talismanic formula or rigid set of prerequisites," and the specific circumstances of a case may lead to additional relevant factors.  *Id.*

The first two *Craig* factors ask us to consider the interests of the parties: the petitioner, the government, and the defendant in the grand jury proceeding.  First, the petitioner, Pitch, is an accomplished author and historian.  He has published many historical works, including a book about the Moore's Ford Lynching.  As we discussed, while not dispositive, the government has a significant and well-established interest in grand jury secrecy that will always weigh against disclosure.  *See Procter & Gamble*, 356 U.S. at 682 n.6, 78 S. Ct. at 986 n.6.  Finally, no defendant in the Moore's Ford grand jury proceeding has objected to disclosure.  *See Craig*, 131 F.3d at 106 ("And if a third-party stranger wishes to obtain release of data about secret meetings over the objection of the defendant, who, perhaps, was never indicted by the grand jury, then the trial judge should be extremely hesitant to grant release of the grand jury material.").

The third, fourth, and seventh *Craig* factors concern the historical importance of the information being sought.  Pitch seeks disclosure for a legitimate, scholarly purpose: to research, write, and educate the public about a significant event in the civil rights movement.  *Cf. Globe Newspaper Co. v. Sup.*

11

*Ct. for Norfolk Cty.*, 457 U.S. 596, 604, 102 S. Ct. 2613, 2619 (1982) (discussing the constitutional right of the public to access records from criminal trials and reasoning that this right "serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government" by protecting "the free discussion of governmental affairs"); *In re Petition of Kutler*, 800 F. Supp. 2d 42, 48 (D.D.C. 2011) (reasoning that "[t]he disclosure of President Nixon's grand jury testimony would likely enhance the existing historical record, foster further scholarly discussion, and improve the public's understanding of a significant historical event.").

Historical importance is objective. It must be distinguished from "journalistic intrigue, public curiosity, or even a subjective importance to family and friends." *Craig*, 131 F.3d at 105 n.8. The Moore's Ford Lynching is clearly an event of exceptional historical significance. Compared to the journalist or the family member of a victim that seeks access to the details of a salacious unsolved crime, the Moore's Ford Lynching is historically significant because it is closely tied to the national civil rights movement. Many consider it to be the last mass lynching in American history. There has been, and continues to be, national media attention and widespread public interest in the murders. According to Pitch, the Moore's Ford Lynching is credited as a catalyst to the President's Committee on Civil Rights, which President Harry Truman created by executive order the same

week the Moore's Ford grand jury was convened. *See* Exec. Order No. 9808, 11 Fed. Reg. 14153 (Dec. 5, 1946). It would be difficult to deny—and the government does not attempt to do so on appeal—that the Moore's Ford Lynching is, objectively, an exceptionally significant event in American history.

Despite considerable public interest, the details are sparse. Even with a crowd of witnesses, no one was prosecuted and no public proceedings were held.[6] For this reason, Pitch sought disclosure of the entire transcript from the grand jury proceedings. As the district court did here, courts should give any party opposing disclosure the opportunity to object to specific portions of the records. The district court should engage in the same balancing test to determine whether, and how much, those portions should be redacted or omitted. *See Douglas Oil*, 441 U.S. at 223, 99 S. Ct. at 1675 ("And if disclosure is ordered, the court may include protective limitations on the use of the disclosed material . . . ."); *Hastings*, 735 F.2d at 1274–75 (approving the district court's "protective conditions").

The interest in continued secrecy is also undercut if details in the records have been publicized. *See Craig*, 131 F.3d at 107; *cf. In re North*, 16 F.3d 1234, 1244–45 (D.C. Cir. 1994) (noting that widespread media release might undercut interest in secrecy to point where Rule 6(e) would not prohibit disclosure). Here,

---

[6] According to Pitch, the FBI interviewed over 2,700 people and subpoenaed over 100 witnesses to testify in front of the grand jury.

this factor weighs against disclosure.  There is no indication that any portion of the grand jury records has been made public, permissibly or not.

Finally, the passage of time will often be the touchstone of our inquiry. Even if other factors weigh strongly in favor of disclosure, an insufficient passage of time since the grand jury proceedings took place is fatal to the petitioner's request for disclosure.  "[T]he passage of time erodes many of the justifications for continued secrecy." *Craig*, 131 F.3d at 107.  The sufficiency of the passage of time must be viewed in light of the policy underlying grand jury secrecy: to protect the important truth-seeking function of grand juries.[7]  As a result, the passage of time generally must be long enough that the principal parties to the investigation— the suspects and witnesses—and their immediate family members have likely died, and that there is no reasonable probability that the government would make arrests based on the disclosed information.  *See id.*

Pitch requested the Moore's Ford grand jury transcripts seventy-one years after the grand jury proceeding took place.[8]  No one has been charged, no one is currently under active investigation, and the principal parties to the investigation were adults at the time of the grand jury proceeding.  Under these circumstances,

---

[7] *See generally United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 n.6, 78 S. Ct. 983, 986 n.6 (1958).

[8] Pitch first requested the records three years earlier, in 2014, which the district court denied. The government appeals from the district court's grant of Pitch's second petition, which he filed in 2017.

14

seventy years is at or near the bounds of sufficient passage of time. There is no indication that any witnesses, suspects, or their immediate family members are alive to be intimidated, persecuted, or arrested. Like the court in *Craig*, we also find it significant that the historical interest in the Moore's Ford Lynching has persisted over time. *See Craig*, 131 F.3d at 107. Although it now seems nearly impossible that anyone will ever be charged, the investigation has been reopened many times, and the event has inspired annual reenactments and several books and articles spanning seven decades.

Balancing these competing interests, the district court did not err in holding that the interest in disclosure outweighed the interest in continued secrecy.

## IV. Conclusion

"We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," but "a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." *Douglas Oil*, 441 U.S. at 218, 99 S. Ct. at 1672. Given our binding decision in *Hastings*, and the truly "exceptional circumstances" presented by the Moore's Ford Lynching, we cannot say that the district court abused its substantial discretion in ordering the release of the grand jury transcripts. The judgment of the district court is affirmed.

**AFFIRMED.**

15

JORDAN, Circuit Judge, concurring:

Three decades ago, we held that a federal court has inherent authority to order the disclosure of grand jury materials in situations not covered by the exceptions to secrecy set forth in Federal Rule of Criminal Procedure 6(e). *See In re Petition to Inspect & Copy Grand Jury Materials (Hastings)*, 735 F.2d 1261, 1268 (11th Cir. 1984) (setting out an "exceptional circumstances" standard). I would have decided *Hastings* differently because allowing the use of inherent authority to go beyond the exceptions to grand jury secrecy set forth in Rule 6(e) seems too open-ended to me. *See Carlson v. United States*, 837 F.3d 753, 767-71 (7th Cir. 2016) (Sykes, J., dissenting).

Nevertheless, I join the court's opinion. Given our decision in *Hastings*, I do not see how we can say that the district court abused its discretion in relying on its inherent authority. In addition, I do not believe there is a persuasive basis to distinguish between the disclosure of grand jury materials for use by a judicial investigating committee (what was at issue in *Hastings*) and the disclosure of grand jury materials to discover the facts surrounding an event of exceptional historical significance (what is at issue here).

* * * * *

If we are going to deny disclosure here, we need to overrule *Hastings*, rather than attempt to distinguish it. My initial view, following oral argument, was that

16

we should consider convening en banc to revisit *Hastings*.  Upon further reflection, however, I have come to a different conclusion, and I'd like to explain why.

First, *Hastings* does not stand alone.  Other federal courts have likewise invoked inherent authority to permit disclosure of grand jury materials in circumstances not covered by Rule 6(e). *See Carlson v. United States*, 837 F.3d 753, 763-66 (7th Cir. 2016); *In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st Cir. 2006); *In re Craig*, 131 F.3d 99, 103 (2d Cir. 1997); *In re Petition of Kutler*, 800 F. Supp. 2d 42, 48 (D.C. Cir. 2011).  *Cf. Haldeman v. Sirica*, 501 F.2d 714, 715 (D.C. Cir. 1974) (en banc) (denying mandamus relief sought by the government to prevent the district court from disclosing to the House Judiciary Committee, post-indictment, a sealed grand jury report and accompanying evidence, while indicating "general agreement" with the district court's handling of the matter).  And at least one court has left the door open to the use of inherent authority for disclosure in dicta.  *See In re Special Grand Jury 89-2*, 450 F.3d 1159, 1178 (10th Cir. 2006).

No federal court, as far as I can tell, has come to a contrary conclusion in a published opinion.  The Eighth Circuit has said that "courts will not order disclosure [of grand jury materials] absent a recognized exception to Rule 6(e) or a valid challenge to the original sealing order or its implementation," *United States v. McDougal*, 559 F.3d 837, 840 (8th Cir. 2009), but it was not faced in that case

17

with an argument for disclosure under inherent authority for matters of exceptional historical significance. Given the current array of authority, we would likely be creating a circuit split by overruling *Hastings*, and that should not be done lightly.

Second, whatever the initial reasons for keeping grand jury matters secret, *compare* George Edwards, Jr., The Grand Jury 116 (1906) [Legal Classics Library ed. 2003] (suggesting that the "original purpose [of grand jury secrecy] was that no offender should escape"), *with* Mark Kadish, *Behind the Locked Doors of an American Grand Jury: Its History, its Secrecy, and its Process*, 24 Fl. St. U. L. Rev. 1, 14 (1996) (explaining that the reasons for grand jury secrecy were varied, and included preventing the flight of suspected criminals, finding out whether witnesses were biased, and ensuring freedom from judicial oversight), in the United States grand jury secrecy was not always seen as an absolute. In cases decided before the enactment of the Federal Rules of Criminal Procedure, some federal courts—including the Supreme Court—held (or at least said) that secrecy is not required after an indictment is returned and the accused is in custody. "[A]fter the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234 (1940). *Accord Metzler v. United States*, 64 F.2d 203, 206 (9th Cir. 1933); *Atwell v. United States*, 162 F. 97, 99-100 (4th Cir. 1908); *In re Grand Jury Proceedings*, 4 F. Supp. 283, 284-85 (E.D. Pa. 1933).

18

If Rule 6(e) was meant to "continue[ ] the traditional practice of secrecy on the part of members of the grand jury except when the court permits a disclosure," Rule 6(e), 1944 Advisory Committee Notes to Subdivision (e), there is a reasonable argument that *Hastings* and its progeny are at least consistent with historical practice. As we have said: "Although Rule 6(e)(3) enumerates the exceptions to the traditional rule of grand jury secrecy, the Supreme Court and this Court have recognized that the district courts have inherent power beyond the literal wording of Rule 6(e)(3) to disclose grand jury material and that Rule 6(e)(3) is but declaratory of that authority." *United States v. Aisenberg*, 358 F.3d 1327, 1347 (11th Cir. 2004). *See also In re Request for Access to Grand Jury Materials*, 833 F.2d 1438, 1442 (11th Cir. 1987) ("As the considerations justifying secrecy become less relevant, the burden of showing the need for disclosure is lessened.").

Third, a survey of the relevant cases indicates that federal courts have been able to apply the test set forth in *In re Craig*, 131 F.3d at 106, without too much difficulty in determining which matters of exceptional historical significance warrant the disclosure of grand jury materials. *See, e.g., In re Application to Unseal Dockets*, 308 F. Supp. 3d 314, 326-35 (D.D.C. 2018); *In re Nichter*, 949 F. Supp. 2d 205, 212–14 (D.D.C. 2013). These courts have explained that exceptional historical significance, though a necessary element for disclosure, is itself not enough. Even if a matter or proceeding is historically significant to an

19

exceptional degree, a court retains discretion to deny disclosure after balancing the requisite factors. *See, e.g., In re Nichter*, 949 F.Supp.2d at 212-14.

Fourth, and perhaps most importantly, a recent attempt to amend Rule 6(e) to permit the disclosure of grand jury records in cases of exceptional historical significance proved unsuccessful. The reason why this proposed amendment failed is insightful, and in my view counsels against revisiting *Hastings* at this time.

In 2011, Attorney General Eric Holder recommended that Rule 6(e) be amended to establish procedures for disclosing historically significant grand jury materials. *See* Letter from Attorney General Eric Holder to Judge Reena Raggi, Chair of the Judicial Conference's Advisory Committee on Criminal Rules, Oct. 18, 2011 (attached). The Department of Justice questioned whether federal courts had inherent authority to allow such disclosures given what it believed was Rule 6(e)'s clear prohibition of disclosure of grand jury materials absent an express exception. *See id.* at 2-5. Attorney General Holder proposed that disclosure of historically significant grand jury materials be permitted, but only under new procedures set forth in Rule 6(e) itself. The procedures suggested by the DOJ would have required anyone seeking disclosure to show, among other things, that the grand jury records in question have "exceptional" historical significance, that at least 30 years have passed since the relevant case files associated with the grand jury records were closed, that no living person would be materially prejudiced by

20

disclosure, and that disclosure would not impede any pending government investigation or prosecution. *See id.* at 8-9.

The Judicial Conference's Advisory Committee on Criminal Rules, then chaired by Second Circuit Judge Reena Raggi, reported in 2012 to the Committee on Rules of Practice and Procedure that it believed that the DOJ's proposed amendment to Rule 6(e) was unnecessary. *See* Minutes of Meeting of June 11-12, 2012, Judicial Conference Committee on Rules of Practice and Procedure, at 44 (relevant pages attached). According to Judge Raggi, all members of a subcommittee of the Advisory Committee on Criminal Rules—with the exception of the DOJ representative—recommended that the DOJ's proposed amendment "not be pursued" because "in the rare cases where disclosure of historic materials had been sought, the district [courts] acted reasonably in referring to their inherent authority," and as a result "there [wa]s no need for a rule on the subject." *Id.*

What happened (or, more accurately, did not happen) in 2012 is not, of course, dispositive. But it is instructive. If those charged with considering amendments to the Federal Rules of Criminal Procedure believed in 2012 that federal courts had properly relied on inherent authority to order the disclosure of historically significant grand jury materials, the case for overruling *Hastings* is lessened.

21

* * * * *

With these thoughts, I join the court's opinion.

11-CR-C



## Office of the Attorney General
### Washington, D. C. 20530
October 18, 2011

The Honorable Reena Raggi, Chair
Advisory Committee on the Criminal Rules
704S United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201-1818

Dear Judge Raggi:

The Department of Justice recommends an amendment to Rule 6(e) of the Federal Rules of Criminal Procedure to allow district courts to permit the disclosure, in appropriate circumstances, of archival grand-jury materials of great historical significance and to provide a temporal end point for grand-jury secrecy with respect to materials that become part of the permanent records of the National Archives.

Although most other categories of historically significant federal records, including classified records, eventually become part of the public historical record of our Nation, Rule 6(e) recognizes no point at which the blanket of grand-jury secrecy is lifted. The public policies that justify grand-jury secrecy are, of course, "manifold" and "compelling." *Pittsburgh Plate Glass Co.* v. *United States*, 360 U.S. 395, 399 (1959). But they do not forever trump all competing considerations. After a suitably long period, in cases of enduring historical importance, the need for continued secrecy is eventually outweighed by the public's legitimate interest in preserving and accessing the documentary legacy of our government. For this reason, a number of federal courts have granted third-party petitions to disclose historically significant grand-jury materials—most recently, for example, the transcript of President Nixon's 1975 testimony to the Watergate grand jury—by invoking the inherent authority of federal courts as a justification for deviating from the requirements of Rule 6(e).

The difficulty is that, as the Supreme Court has made clear, federal courts have no inherent authority to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure. See, *e.g.*, *Carlisle* v. *United States*, 517 U.S. 416, 426 (1996). In our view, the growing acceptance among federal courts of a "historical significance" exception to Rule 6(e) threatens to undermine the essential principle that Rule 6(e) encompasses, within its four corners, the rule of grand-jury secrecy and all of its exceptions and limitations. We therefore propose an amendment to Rule 6(e) that would accommodate society's legitimate interest in securing eventual public access to grand-jury materials of significant historical importance, while at the same time defining the contours of that access within the text of Rule 6(e).

The Honorable Reena Raggi
Page 2

## A. Background

Rule 6(e) "codifies the traditional rule of grand jury secrecy," *United States* v. *Sells Engineering, Inc.*, 463 U.S. 418, 425 (1983), which is "older than our Nation itself," *Pittsburgh Plate Glass*, 360 U.S. at 399. Rule 6(e) imposes a flat prohibition on disclosures by non-witness participants in grand-jury proceedings "[u]nless these rules provide otherwise." Fed. R. Crim. P. 6(e)(2)(B). Most of the exceptions, which are enumerated in Rule 6(e)(3), concern disclosures to other government officials or related persons in the course of government business. See Rule 6(e)(3)(A)-(D).

Rule 6(e)(3)(E), in turn, identifies five circumstances in which a district court may order the disclosure of grand-jury materials in its own discretion. It is not an open-ended list: by its plain terms, the rule defines the universe of circumstances in which a district court "may authorize disclosure . . . of a grand-jury matter." Of the five circumstances listed, only two permit disclosures to non-government officials:

> (E) The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:
>
> > (I) preliminarily to or in connection with a judicial proceeding;
> >
> > (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury; . . .

Fed. R. Crim. P. 6(e)(3)(E)(i)-(ii).

Neither of these provisions—nor any other provision of law—authorizes a third party to obtain access to grand-jury material merely because it is historically significant. The first exception ("preliminarily to or in connection with a judicial proceeding") cannot support a free-standing petition to release historical grand-jury records. "[O]bviously the permission to disclose for use in connection with 'a judicial proceeding' does not encompass a proceeding instituted solely for the purpose of accomplishing disclosure." *In re Biaggi*, 478 F.2d 489, 492 (2d Cir. 1973) (Friendly, J.). Rather, disclosure under Rule 6(e)(3)(E)(I) is permitted only if "the primary purpose" is "to assist in preparation or conduct of a judicial proceeding," *United States* v. *Baggot*, 463 U.S. 476, 480 (1983), and only where the materials are "needed to avoid a possible injustice" and the disclosure is tailored "to cover only material so needed," *Douglas Oil Co.* v. *Petrol Stops Northwest*, 441 U.S. 211, 222 (1979). And all of the other exceptions address specific circumstances in which the need for the materials and identity of the recipient is carefully delineated. In this sense, Rule 6(e) "is, on its face, an affirmative limitation on the availability of court-ordered disclosure of grand jury materials." *Baggot*, 463 U.S. at 479. The court-ordered disclosure to third-party requesters of grand-jury records in their entirety,

The Honorable Reena Raggi
Page 3

unconnected to any otherwise pending judicial proceeding, without a particularized showing of need, and based solely on the records' historical significance, is outside the contemplation of Rule 6(e).

Nonetheless, some courts have exercised what they have described as their inherent authority to release historically significant grand-jury material. These courts have held that "special circumstances" may justify disclosure of grand-jury materials even when none of Rule 6(e)'s specific exceptions applies. The leading decision is *In re Craig*, 131 F.3d 99 (2d Cir. 1997), in which the Second Circuit stated that "there are certain 'special circumstances' in which release of grand jury records is appropriate even outside of the boundaries of the rule." *Id.* at 102 (quoting *In re Biaggi*, 478 F.2d at 494 (supplemental opinion)). Under that doctrine, the court reasoned, "historical interest, on its own," may "justify[] release of grand jury material in an appropriate case." *Id.* at 105. "To the extent that the John Wilkes Booth or Aaron Burr conspiracies, for example, led to grand jury investigations, historical interest might by now overwhelm any continued need for secrecy." *Ibid.* To the government's argument that Rule 6(e) controls the disclosure of grand-jury material, the court responded that the rule "reflects rather than creates the relationship between federal courts and grand juries," *id.* at 102 (citing *Pittsburgh Plate Glass*, 360 U.S. at 399), and that "permitting departures from Rule 6(e)" is therefore "fully consonant with the role of the supervising court," *id.* at 103.[1]

Embracing this approach, district courts in several circuits have granted petitions for access to grand-jury materials of historical importance. See, *e.g.*, *In re Petition of Kutler*, No. 10-547, 2011 WL 3211516 (D.D.C. July 29, 2011) (granting petition for access to grand-jury testimony by President Nixon); *In re Tabac*, No. 3:08-mc-0243, 2009 WL 5213717 (M.D. Tenn. Apr. 14, 2009) (same, grand-jury records concerning the jury-tampering indictment of Jimmy Hoffa); *In re Petition of National Security Archive*, No. 1:08-cv-6599, Docket entry No. 3 (S.D.N.Y. Aug. 26, 2008) (same, espionage indictment of Julius and Ethel Rosenberg); *In re American Historical Ass'n*, 49 F. Supp. 2d 274 (S.D.N.Y. 1999) (same, espionage investigation of Alger Hiss). Following the Second Circuit's reasoning in *In re Craig*, these decisions have all relied on a notion of inherent authority to approve the release of grand-jury records that Rule 6(e) would otherwise require to remain secret. In the *Kutler* case, for example, the district court

---

[1] The Eleventh Circuit reached a similar conclusion about the scope of a district court's inherent authority in *In re Petition to Inspect and Copy Grand Jury Materials (Hastings)*, 735 F.2d 1261 (11th Cir.), cert. denied, 469 U.S. 884 (1984), which concerned a petition filed on behalf of a special committee of the court of appeals that was investigating misconduct by a district judge. The Eleventh Circuit rejected the contention that Rule 6(e) spells out the exclusive basis on which a court may order the disclosure of grand-jury records and held that the district court had properly exercised its "inherent power" to grant the special committee's request. *Id.* at 1268; see also *Haldeman v. Sirica*, 501 F.2d 714 (D.C. Cir. 1974) (en banc). Although *Hastings* relied on inherent authority, the disclosure might alternatively be understood as being "in connection with a judicial proceeding." The court viewed the disclosure to the special committee as "at least closely analogous to the situation for which the explicit Rule 6(e)(3)(C)(I) exception was created." 735 F.2d at 1268.

The Honorable Reena Raggi
Page 4

granted a petition filed by historian Stanley Kutler and various historical organizations for access to the transcript of President Nixon's 1975 testimony before the Watergate special grand jury and certain related files of the Watergate Special Prosecution Force. The petitioners conceded that no provision of Rule 6(e) would permit the court to approve their request. The court nevertheless approved it, holding that the power to release historically significant grand-jury records is "well grounded in courts' inherent supervisory authority to order the release of grand jury materials." 2011 WL 3211516, at *5; see also *id.* at *3 ("[C]ourts' ability to order the disclosure of grand jury records has never been confined by Rule 6(e)'s enumerated exceptions.").

Although historians have an understandable desire for access, many decades after the investigations have closed, to grand-jury records concerning the Watergate investigation, the espionage trial of the Rosenbergs, and similar matters of enduring historical resonance—provided that interests in personal privacy and governmental functions are taken into account and appropriately weighed—the Supreme Court has specifically rejected the proposition that a district court has inherent authority to create exceptions to the rules of criminal procedure adopted by the Court in its rulemaking capacity. "Whatever the scope of [a court's] 'inherent power,' * * * it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Carlisle* v. *United States*, 517 U.S. 416, 426 (1996); see also *Bank of Nova Scotia* v. *United States*, 487 U.S. 250, 254-255 (1988); *Johnson* v. *United States*, 520 U.S. 461, 466 (1997) (refusing to "creat[e] out of whole cloth * * * an exception to" Rule 52(b), "an exception which we have no authority to make" (citing *Carlisle*, 517 U.S. at 425-426)). As the Supreme Court explained in *Bank of Nova Scotia*, the Rules Enabling Act provides that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 28 U.S.C. 2072(b); see 487 U.S. at 255. That principle applies *a fortiorari* under Rule 6(e), which in relevant part was enacted directly by Congress. Pub. L. No. 95-78, § 2(a), 91 Stat. 319 (1977); see *Thomas* v. *Arn*, 474 U.S. 140, 148 (1985) (even a "sensible and efficient use of the supervisory power . . . is invalid if it conflicts with constitutional or statutory provisions"). Because Rule 6(e) is, "on its face, an affirmative limitation on the availability of court-ordered disclosure of grand jury materials," *Baggot*, 463 U.S. at 479, a judicially created doctrine of public access to historically significant grand-jury material exceeds the bounds of courts' inherent authority.

Indeed, federal courts do not typically regulate the conduct of a grand jury, which is "an institution separate from the courts, over whose functioning the courts do not preside." *United States* v. *Williams*, 504 U.S. 36, 47 (1992). "Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length. Judges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office." *Ibid.* Consequently, "any power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own

The Honorable Reena Raggi
Page 5

proceedings." *Id.* at 50. The notion that a court possesses "inherent supervisory authority to order the release of grand jury materials," *Kutler*, 2011 WL 3211516, at *5, is therefore not only inconsistent with the prescriptive force of Rule 6(e), but also in tension with the institutional relationship between courts and grand juries.

Notably, Judge Friendly's 1973 decision in *In re Biaggi*, the wellspring of the "special circumstances" doctrine, predates the Supreme Court's decisions in *Carlisle, Bank of Nova Scotia,* and *Williams.* So, too, does the Eleventh Circuit's decision in *Hastings.* See note 1, *supra.* Indeed, *In re Biaggi* also predates Congress's direct enactment of Rule 6(e) in 1977, which undermines any claim that the rule is open to circumvention through a court's inherent authority. And although the Second Circuit decided *In re Craig* in 1997, the court "reaffirm[ed] the continued vitality of our 'special circumstances' test of *Biaggi*," 131 F.3d at 103, without citing or discussing *Carlisle, Bank of Nova Scotia,* or *Williams.*[2]

In sum, the Second Circuit's basic insight in *In re Craig*—that in long-closed cases of enduring historical significance, the public's interest in access to the primary-source records of our national history may on occasion "overwhelm any continued need for secrecy," 131 F.3d at 105—seems fundamentally correct. Although the justifications for grand-jury secrecy "are not eliminated merely because the grand jury has ended its activities," *Douglas Oil*, 441 U.S. at 222, neither do those interests remain paramount for all time. But the present state of the doctrine, in which individual district courts entertain motions for disclosure under their inherent authority and subject to their unbounded discretion, is untenable under governing Supreme Court precedent. It is also harmful to the fundamental principle that Rule 6(e) controls the secrecy of grand-jury materials within its four corners.

## B. Description of Proposed Amendment

The Department of Justice therefore proposes amending Rule 6(e) to authorize the disclosure of historically significant grand-jury materials after a suitable period of years, subject to appropriate limitations and procedural protections. By expressly permitting district courts to act on requests for such records, yet at the same time cabining their discretion through a formal exception to Rule 6(e), the Committee can maintain the primacy of the Criminal Rules and the exclusivity of the framework created by Rule 6(e). Such an amendment would recognize the public's legitimate interest in gaining access to records that may cast new light on important people and events in American history, while at the same time protect the important goals served by the rule of grand-jury secrecy.

---

[2] The Second Circuit in *In re Craig* also relied on *Pittsburgh Plate Glass* for the proposition that Rule 6(e) commits disclosure to the discretion of the trial judge. 131 F.3d at 102. But the Supreme Court in that case emphasized that "any disclosure of grand jury minutes is covered by Fed. Rules Crim. Proc. 6(e) promulgated by this Court in 1946 after the approval of Congress." 360 U.S. at 398-399.

The Honorable Reena Raggi
Page 6

Our proposal limits the release of grand-jury records to those determined to have permanent historical value under Title 44, United States Code.[3] Such records are transferred to the National Archives and Records Administration (NARA) as part of Department of Justice case files and form part of its permanent collection. This threshold screening requirement ensures that grand-jury secrecy is not abrogated in routine cases that do not, in themselves, have any recognized historical value. Within the universe of those documents transferred to NARA, the proposal embodies a two-tier approach. First, as to cases at least 30 years old, the rule would authorize district courts, on a case-by-case basis, to determine that the requirements of grand-jury secrecy are outweighed by the records' historical significance. Second, as to cases that are 75 years old or older, grand-jury secrecy interests would cease to be applicable and the records would become available to the public under the same standards applicable to other public records held by NARA.

The current treatment of grand-jury records helps illuminate this proposal. Much grand-jury material is deemed to be of no particular historical value. After the relevant cases are closed and a suitable period has passed, these materials are destroyed pursuant to record schedules approved by NARA. Grand-jury materials of continuing interest or value to the Department of Justice are stored for a period of time. Of these materials, some are ultimately transferred to the Archives' custody on the basis that they have been "determined by the Archivist of the United States to have sufficient historical or other value to warrant their continued preservation by the United States Government." 44 U.S.C. 2107(1). The standards and timetables governing that determination for case files that contain grand-jury information are set forth in records schedules already in place for the Department of Justice and approved by NARA. Under present law, a Freedom of Information Act (FOIA) request filed with NARA for grand-jury records in NARA's custody will be denied under FOIA Exemption 3, 5 U.S.C. 552(b)(3), on the ground that disclosure is barred under Rule 6(e). See, e.g., *Fund for Constitutional Government* v. *National*

---

[3] In relevant part, 44 U.S.C. 2107 provides:

When it appears to the Archivist to be in the public interest, he may—

(1) accept for deposit with the National Archives of the United States the records of a Federal agency, the Congress, the Architect of the Capitol, or the Supreme Court determined by the Archivist of the United States to have sufficient historical or other value to warrant their continued preservation by the United States Government; [and]

(2) direct and effect the transfer to the National Archives of the United States of records of a Federal agency that have been in existence for more than thirty years and determined by the Archivist of the United States to have sufficient historical or other value to warrant their continued preservation by the United States Government, unless the head of the agency which has custody of them certifies in writing to the Archivist that they must be retained in his custody for use in the conduct of the regular current business of the agency[.]

44 U.S.C. 2107(1)-(2).

The Honorable Reena Raggi
Page 7

*Archives and Records Service*, 656 F.2d 856, 866-870 (D.C. Cir. 1981).

Under the proposed rule, courts would have authority to consider requests for the disclosure of grand-jury records of great historical significance after they have been transferred to the permanent custody of the Archives. No request could be entertained until the records have been in existence for 30 years. The 30-year benchmark corresponds to the statutory time after which the Archivist may direct that agencies transfer historically significant records to his custody. See note 3, *supra*. Those two limitations ensure that (1) the grand-jury records might have some value to historians and (2) sufficient time has passed both to gauge their historical significance and to create a reasonable possibility that privacy interests have faded to a degree that disclosure might be warranted, with or without redactions.

But even within that universe of records, grand-jury secrecy interests still have presumptive force, and the grant of a disclosure order under Rule 6(e) should not be routine. Rather, it should be relatively rare—as it has been to date. Courts should evaluate each request on a case-by-case basis to assess whether the records have true value to historians and the public and whether that value outweighs the secrecy interests of living persons. While such an evaluation will inevitably involve a measure of judgment and discretion in light of the specific facts and context, courts will be guided by the paradigm examples of disclosure to date—*e.g.*, the Nixon, Rosenberg, and Hiss grand-jury testimony—and by the factors considered by the courts that ordered disclosure in those cases. Those factors include:

> (I) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.

*In re Craig*, 131 F.3d at 106. The proposed rule authorizing disclosure of grand-jury material does not spell out these factors, which are better left to elaboration in the Advisory Committee Notes and then to development in the case law. But it does require the district court to make appropriate findings, before authorizing disclosure, to determine that the records have "exceptional historical importance" above and beyond their possession in the custody of the Archivist; to confirm that they have been in existence for at least 30 years; to ensure that the legitimate interests of any living witnesses or investigative targets whose interests might be

The Honorable Reena Raggi
Page 8

prejudiced through disclosure are not prejudiced; and to confirm that no impairment of ongoing law enforcement activities would result. The rule also allows the court to impose reasonable conditions, such as redaction, to protect ongoing privacy or other interests.

Our proposal provides that an order granting or denying a petition for the release of historically significant grand-jury material is a final decision subject to appeal under 28 U.S.C. 1291. The Rules Enabling Act specifically provides that the federal Rules "may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title." 28 U.S.C. 2072(c). Because a petition to disclose grand-jury materials created in connection with a long-closed investigation or criminal case is neither a continuation of a criminal matter nor a traditional civil action, it seems appropriate to clarify that a district court order granting or denying such a petition is an appealable decision in its own right.

After 75 years, the interests supporting grand-jury secrecy and the potential for impinging upon legitimate privacy interests of living persons have virtually entirely faded. That is generally true for government records that are highly protected against routine disclosure. For example, most classified records in the custody of the Archivist that have not previously been declassified become automatically declassified after 75 years.[4] Thus, we propose that Rule 6(e) be amended to provide that, after 75 years, grand-jury records would become available to the public in the same manner as other archival records in NARA's collections, typically by requesting access to the records at the appropriate NARA research facility or by filing a FOIA request. See generally 36 C.F.R. Part 1256, Subpart B.

### C. Language of Proposed Amendment

Our proposed amendment includes three parts.

1. We propose to define the term "archival grand-jury records" by adding a new Rule 6(j), following the existing definition of "Indian Tribe" in Rule 6(I). (Alternatively, if the Committee preferred, these definitions could be consolidated into a single "definitions" paragraph.)

---

[4] Under Executive Order 13526, many classified records are automatically declassified at 25 years and most of the remaining classified records are automatically declassified after 75 years:

> Records exempted from automatic declassification under this paragraph shall be automatically declassified on December 31 of a year that is no more than 75 years from the date of origin unless an agency head, within 5 years of that date, proposes to exempt specific information from declassification at 75 years and the proposal is formally approved by the Panel.

Exec. Order No. 13,526, § 3.3(h)(3), 3 C.F.R. 310 (2010). For additional information on the automatic declassification process, see http://www.justice.gov/open/declassification-faq.html.

The Honorable Reena Raggi
Page 9

(j) "Archival Grand-jury Records" Defined. For purposes of this Rule, "archival grand-jury records" means records from grand-jury proceedings, including recordings, transcripts, and exhibits, where the relevant case files have been determined to have permanent historical or other value warranting their continued preservation under Title 44, United States Code.

2. We propose the following addition to Rule 6(e)(3)(E) to permit district courts to grant petitions for the release of archival grand-jury records that have exceptional historical importance after 30 years in appropriate cases:

(E) The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:

. . . .

(vi) on the petition of any interested person if, after notice to the government and an opportunity for a hearing, the district court finds on the record by a preponderance of the evidence that:

(a) the petition seeks only archival grand-jury records;

(b) the records have exceptional historical importance;

(c) at least 30 years have passed since the relevant case files associated with the grand-jury records have been closed;

(d) no living person would be materially prejudiced by disclosure, or that any prejudice could be avoided through redactions or such other reasonable steps as the court may direct;

(e) disclosure would not impede any pending government investigation or prosecution; and

(f) no other reason exists why the public interest requires continued secrecy.

An order granting or denying a petition under this paragraph is a final decision for purposes of Section 1291, Title 28.

3. Finally, we propose to make the following addition to Rule 6(e)(2) to establish the authority of NARA to release archival grand-jury materials in its collections after 75 years. Because Rule 6(e) is the only impediment to NARA's acting on a FOIA request for grand-jury records, all that is necessary is to state that Rule 6(e) shall not prohibit disclosure after that time.

The Honorable Reena Raggi
Page 10

The "require . . . to withhold from the public" formulation tracks the terms of FOIA Exemption 3, 5 U.S.C. 552(b)(3).

> (2) Secrecy.
>
> ....
>
> **(C) Nothing in this Rule shall require the Archivist of the United States to withhold from the public archival grand-jury records more than 75 years after the relevant case files associated with the grand-jury records have been closed.**

\* \* \*

We believe this proposal warrants timely and thorough consideration by the Advisory Committee, as it will eliminate the prevailing uncertainty over the authority of district courts to deviate from the scope of Rule 6(e) when faced with petitions for access to historically significant grand-jury material. We also believe it strikes the appropriate balance between safeguarding the purposes of grand-jury secrecy and acknowledging the public's legitimate interest in obtaining access to grand-jury records that have enduring significance for the history of our Nation.

We look forward to discussing this with you and the Committee.

Sincerely,

Eric H. Holder, Jr.
Attorney General

cc:     Professor Sara Sun Beale, Reporter
        Professor Nancy J. King, Reporter

COMMITTEE ON RULES OF PRACTICE AND PROCEDURE
Meeting of June 11-12, 2012
Washington, D.C.
**Minutes**

TABLE OF CONTENTS

Attendance.......................................................... 1
Introductory Remarks............................................ 3
Report of the Administrative Office....................... 3
Approval of the Minutes of the Last Meeting........ 4
Reports of the Advisory Committees:
    Appellate Rules......................................... 4
    Bankruptcy Rules...................................... 8
    Civil Rules............................................... 26
    Criminal Rules.......................................... 40
    Evidence Rules......................................... 45
Report of the E-Filing Subcommittee.................. 47
Assessment of the Judiciary's Strategic Plan...... 48
Next Committee Meeting.................................... 48

**ATTENDANCE**

The mid-year meeting of the Judicial Conference Committee on Rules of Practice and Procedure was held in Washington, D.C., on Monday and Tuesday, June 11 and 12, 2012. The following members were present:

Judge Mark R. Kravitz, Chair
Dean C. Colson, Esquire
Roy T. Englert, Jr., Esquire
Gregory G. Garre, Esquire
Judge Neil M. Gorsuch
Judge Marilyn L. Huff
Chief Justice Wallace B. Jefferson
Dean David F. Levi
Judge Patrick J. Schiltz
Judge James A. Teilborg
Larry D. Thompson, Esquire
Judge Richard C. Wesley
Judge Diane P. Wood

Deputy Attorney General James M. Cole was unable to attend. The Department of Justice was represented throughout the meeting by Elizabeth J. Shapiro, Esquire, and at various points by Kathleen A. Felton, Esquire; H. Thomas Byron III, Esquire; Jonathan J. Wroblewski, Esquire; Ted Hirt, Esquire; and J. Christopher Kohn, Esquire.

Judge Jeremy D. Fogel, Director of the Federal Judicial Center, participated in the meeting, as did the committee's consultants – Professor Geoffrey C. Hazard, Jr.; Professor R. Joseph Kimble; and Joseph F. Spaniol, Jr., Esquire.

Providing support to the committee were:

| | |
|---|---|
| Professor Daniel R. Coquillette | The committee's reporter |
| Peter G. McCabe | The committee's secretary |
| Jonathan C. Rose | Chief, Rules Committee Support Office |
| Benjamin J. Robinson | Deputy Chief, Rules Committee Support Office |
| Julie Wilson | Attorney, Rules Committee Support Office |
| Andrea L. Kuperman | Rules law clerk to Judge Kravitz |
| Joe Cecil | Research Division, Federal Judicial Center |

Also attending were Administrative Office attorneys James H. Wannamaker III, Bridget M. Healy, and Holly T. Sellers, and the judiciary's Supreme Court fellows.

Representing the advisory committees were:

Advisory Committee on Appellate Rules —
        Judge Jeffrey S. Sutton, Chair
        Professor Catherine T. Struve, Reporter
Advisory Committee on Bankruptcy Rules —
        Judge Eugene R. Wedoff, Chair
        Professor S. Elizabeth Gibson, Reporter
        Professor Troy A. McKenzie, Associate Reporter
Advisory Committee on Civil Rules —
        Judge David G. Campbell, Chair
        Professor Edward H. Cooper, Reporter
        Professor Richard L. Marcus, Associate Reporter
Advisory Committee on Criminal Rules —
        Judge Reena Raggi, Chair
        Professor Sara Sun Beale, Reporter
Advisory Committee on Evidence Rules —
        Judge Sidney A. Fitzwater, Chair
        Professor Daniel J. Capra, Reporter

FED. R. CRIM. P. 6(e)

Judge Raggi reported that the advisory committee had received a letter from the Attorney General in October 2011 recommending that FED. R. CRIM. P. 6(e) (grand jury secrecy) be amended to establish procedures for disclosing historically significant grand jury materials. She noted that applications to release historic grand jury materials had been presented to the district courts on rare occasions, and the courts had resolved them by reference to their inherent supervisory authority over the grand jury.

The Department of Justice, however, questioned whether that inherent authority existed in light of Rule 6(e)'s clear prohibition on disclosure of grand jury materials. Instead, it recommended that disclosure should be permitted, but only under procedures and standards established in the rule itself. The Department submitted a very thoughtful memo and proposed rule amendments that would: (1) allow district courts to permit disclosure of grand jury materials of historical significance in appropriate circumstances and subject to required procedures; and (2) provide a specific point in time at which it is presumed that materials may be released.

She noted that a subcommittee, chaired by Judge John F. Keenan, had examined the proposal and consulted with several very knowledgeable people on the matter. In addition, the advisory committee reporters prepared a research memorandum on the history of Rule 6(e), the relationship between the court and the grand jury and case law precedents on the inherent authority of a judge to disclose grand jury material. After examining the research and discussing the proposal, all members of the subcommittee, other than the Department of Justice representatives, recommended that the proposed amendment not be pursued.

The full advisory committee concurred in the recommendation and concluded that in the rare cases where disclosure of historic materials had been sought, the district judges acted reasonably in referring to their inherent authority. Therefore, there is no need for a rule on the subject.

Judge Raggi added that she had received a letter from the Archivist of the United States strongly supporting the Department of Justice proposal. She spoke with him at length about the matter and explained that it would be a radical change to go from a presumption of absolute secrecy, which is how grand juries have always operated, to a presumption that grand jury materials should be presumed open after a certain number of years. A change of that magnitude, she said, would have to be accomplished through legislation, rather than a rule change. She noted that the archivist has a natural, institutional inclination towards eventually releasing historical archived documents and might consider supporting a legislative change.

GRAHAM, District Judge, dissenting:

The court creates an exception to the rule of grand jury secrecy, doing so on the assertion that the rationale for secrecy erodes over time. The exception appears to be limited to matters fitting two main criteria: enough time has elapsed for the parties to the event to have died and enough present-day authority considers the event to be of exceptional historical significance. The court states that the test for historical significance is objective but leaves the test open-ended. The court provides little guidance for the analysis except to say that historical significance requires more than an interested journalist, curious public or concerned friend or family member.

I disagree with the majority on several fronts. I believe that judges should not be so bold as to grant themselves the authority to decide that the historical significance exception should exist and what the criteria should be. I agree with the dissent of Judge Sykes in *Carlson v. United States*, 837 F.3d 753, 767 (7th Cir. 2016) (Sykes, J., dissenting), and would hold that Rule 6(e) of the Federal Rules of Criminal Procedure limits a district court's authority to order the disclosure of grand jury records. Rule 6(e)(3) codifies the policy choices made about which exceptions should be recognized. Nothing analogous to a historical significance exception can be found there.

23

The court relies on *Hastings* to sanction a broader exercise of judicial power than the decision's narrow holding supports. *Hastings* permitted an exception to grand jury secrecy for a judicial investigating committee. It found the situation to be "closely akin" to the Rule 6(e)(3)(E)(i) exception for judicial proceedings. *In re Petition to Inspect & Copy Grand Jury Materials (Hastings)*, 735 F.2d 1261, 1272 (11th Cir. 1984). An exception for matters of historical significance bears no resemblance to an exception which applies "to assist in preparation or conduct of a judicial proceeding." *United States v. Baggot*, 463 U.S. 476, 480, 103 S. Ct. 3164, 3167 (1983).

But even if a district court has inherent authority to order disclosure outside of Rule 6(e), I do not believe it should be exercised in this case. The rule of grand jury secrecy serves many interests, including "assur[ing] that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219, 99 S. Ct. 1667, 1673 (1979). This case presses the matter further, both in time and scope. Do subsequent generations—the children, grandchildren and beyond—of not only the suspects but also the grand jury witnesses and grand jurors themselves have reputational interests that warrant protection?

Because "secrecy of the grand jury is sacrosanct," *United States v. Phillips*, 843 F.2d 438, 441 (11th Cir. 1988), and because disclosure of grand jury material

24

is prohibited "except in the limited circumstances provided for in Rule 6(e)(3)," *United States v. Aisenberg*, 358 F.3d 1327, 1347 (11th Cir. 2004), the rule of secrecy, as codified in Rule 6(e)(3), has always applied to protect the interests of subsequent generations.

Disclosure of grand jury records should not be permitted without an exacting review which gives due weight to the privacy and reputational interests at stake. It is troubling that the court has authorized disclosure of the records without examining their contents.[1] It is troubling too that the government has elected not to contest the proposition that there is no interest to be served in continued secrecy.

That an event has exceptional historical significance cuts both ways. With the principal parties having passed away and the investigation gone cold, one might conclude the matter is stale and the need for secrecy over. Yet, exceptional significance suggests a continued interest in, and impact from, the event. The Moore's Ford Lynching played a part in the civil rights movement and interest remains very much alive, particularly among members of the community affected by the event. The depth of their interest is illustrated by the Moore's Ford Memorial Committee, which has advocated for racial justice and held events memorializing the victims over the past two decades. The Committee has placed grave markers for the victims and a historical marker near the site of the lynching.

---

[1] The grand jury records were not made a part of the record before the court.

25

A member of the Committee and a granddaughter of one the victims attended oral argument in this appeal. Community members organize an annual reenactment in honor of the victims. They still search for justice.

The vitality of the community's continued interest raises possible repercussions for the living descendants and relatives of those individuals whom the grand jury records will identify as being suspects, witnesses and grand jurors. The modern public rightly views the lynching and failure to indict as a horrific injustice, and many perceive it to have been the work of the Ku Klux Klan. Would knowing that grand jury records could someday be disclosed and affect the standing of a child or grandchild in the community deter a grand jury witness from fully telling the truth? Could the conduct of a witness or grand juror involved in an event that is viewed at the time as momentous or sensational be influenced by a concern for their own legacy among future generations?

I would hold that the reputational interests protected by Rule 6(e) include those of subsequent generations. I am unable to dismiss the reputational harm that could occur to a living person if the grand jury transcripts reveal that their parent or grandparent was a suspect, a witness who equivocated or was uncooperative, a member of the grand jury which refused to indict, or a person whose name was identified as a Klan member.

26

Accordingly, I dissent and would reverse the district court's order. At a minimum this court should provide protections to limit the harm its newly-created exception to grand jury secrecy could cause. The court should, for example, instruct the district court on remand to examine the grand jury records, with the assistance of the government, and to protect discernible reputational interests by taking measures such as redacting names and other identifying information.