# United States Court of Appeals
## For the First Circuit

No. 20-1836

IN RE: PETITION FOR ORDER DIRECTING RELEASE OF RECORDS

JILL LEPORE,

Petitioner, Appellee,

v.

UNITED STATES OF AMERICA,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Lynch and Kayatta, Circuit Judges,
and Laplante,[*] District Judge.

Brad Hinshelwood, Attorney, Civil Division, with whom Jeffrey Bossert Clark, Acting Assistant Attorney General, Andrew E. Lelling, United States Attorney, and Michael S. Raab, Attorney, Civil Division, were on brief, for Appellant.
Jacob M. Schriner-Briggs,[**] with whom Charles Crain, Media Freedom & Information Access Clinic, Abrams Institute, Yale Law School, Jonathan M. Albano, Noah J. Kaufman, and Morgan Lewis &

---

[*]  Of the District of New Hampshire, sitting by designation.

[**]  On May 5, 2021, the Court granted leave for Jacob M. Schriner-Briggs, a law student, to participate in oral argument pursuant to 1st Cir. R. 46.0(f).

Bockius LLP were on brief, for Appellee.

Bruce D. Brown, Katie Townsend, Lin Weeks, and Reporters Committee for Freedom of the Press on brief for Reporters Committee for Freedom of the Press and 39 Media Organizations, amici curiae.

Scott L. Nelson, Allison M. Zieve, and Public Citizen Litigation Group on brief for American Historical Association, American Society for Legal History, National Security Archive, Organization of American Historians, and Society of American Archivists, amici curiae.

---

February 28, 2022

---

KAYATTA, **Circuit Judge**. This case traces its origins to grand juries empaneled in 1971 to consider possible criminal charges arising out of the publication of excerpts from the so-called Pentagon Papers, a government study of the Vietnam War. At the request of historian Jill Lepore, the district court ordered the release of sealed archival records of the grand jury proceedings. The court stayed its order pending this timely appeal by the government. For the following reasons, we find that a federal court does not have the authority to order the release of grand jury records based on a finding that historical interest in the records outweighs any countervailing considerations. Accordingly, we reverse both the order of the district court and its judgment in favor of the petitioner. Our reasoning follows.

## I.

Beginning in 1971, the New York Times published excerpts of the Pentagon Papers obtained from Daniel Ellsberg, an analyst who had helped prepare them. The Nixon Administration sought to enjoin their publication -- to no avail. See New York Times Co. v. United States, 403 U.S. 713 (1971).[1]

That same year, authorities investigating how Ellsberg had obtained, copied, and disseminated the Pentagon Papers

---

[1] The Administration also tried and failed to prevent the papers' publication by the Washington Post, id. at 714, which had begun printing excerpts after the New York Times.

empaneled two federal grand juries in Boston. Among those who received a grand jury subpoena was Samuel Popkin, a political scientist who had crossed paths with Ellsberg while working in Vietnam. Popkin ultimately refused to testify about some topics, was held in civil contempt, and appealed to this court. See United States v. Doe, 460 F.2d 328 (1st Cir. 1972) (affirming in part and reversing in part). He spent eight days in jail. The grand jury that had subpoenaed Popkin was discharged without securing any further testimony from him.

Decades later, Popkin and his grand jury experience piqued the interest of Harvard history professor and author Jill Lepore. Working on a book about Popkin's former employer, the Simulmatics Corporation, Lepore decided "that she needed to know more" about the grand jury investigations in which Popkin had been caught up.

Upon learning that the grand jury records she sought were under indefinite seal at the National Archives in Boston, Lepore filed a Freedom of Information Act (FOIA) request seeking their release. In short order, her request was denied "to preserve the secrecy of grand jury proceedings per 5 U.S.C. § 552(b)(3), pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure."

Rather than appealing the denial of her FOIA request, Lepore filed a petition in the federal district court seeking release of the records "pursuant to Federal Rule of Criminal

Procedure 6(e)."  Lepore did not argue that Rule 6(e) expressly authorized release of the records she sought.  Rather, she claimed that the court possessed the inherent authority to release the records.  The government moved to dismiss, but the district court granted Lepore's petition and ordered the records released, subject to considering redactions for especially sensitive material.  In so ruling, the district court relied on two rationales.  First, the court held that Rule 6(e)(6) authorized the disclosure.  Second, it held that, apart from Rule 6, the court's inherent authority authorized the disclosure because of the records' possible interest to historians and the absence of any remaining practical countervailing considerations.  After briefly describing the regime that governs grand jury records, we address each rationale in turn.

## II.

"Unlike an ordinary judicial inquiry, where publicity is the rule, grand jury proceedings are secret."  Levine v. United States, 362 U.S. 610, 617 (1960).  Grand jury proceedings and records have been "kept from the public eye" since the 17th century.  Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 218 n.9 (1979).  Today, this common-law "rule of grand jury secrecy" remains "an integral part of our criminal justice system."  Id.  The Supreme Court has identified a "public interest in [this] secrecy," id. at 223, explaining:

- 5 -

> [I]f preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

Id. at 219.

Of course, secrecy can sometimes undercut other important aims. Cognizant of this fact, Congress has affirmed in Federal Rule of Criminal Procedure 6(e)(3) the adoption of certain exceptions to the secrecy norm. Subsections (A)-(D) authorize certain disclosures that may be made without court approval. Subsection (E) specifies five circumstances in which a "court may authorize disclosure," as follows:

> (i) preliminarily to or in connection with a judicial proceeding;
>
> (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;
>
> (iii) at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;

(iv) at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or

(v) at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

Fed. R. Crim. P. 6(e)(3)(E)(i)-(v). But unless and until the disclosure of grand jury materials is authorized, Rule 6(e)(6) provides that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury."

**III.**

The district court read Rule 6(e)(6) as implicitly authorizing disclosure in this case. The court reasoned that it was "no longer necessary to keep the materials in question under seal" because they were "nearly fifty years old, ha[d] been the subject of contemporaneous newspaper articles, and ha[d] been partially disclosed in both public court filings and statements made by grand jury witnesses."

- 7 -

Unlike the district court, we do not glean from the recordkeeping provisions of Rule 6(e)(6) a negative implication permitting the release of grand jury records. The rule says nothing about when or for what reason disclosure can be authorized. Rather, it simply calls for sealing such records to the extent necessary to "prevent [their] unauthorized disclosure." Rule 6(e)(6) thus does not directly address the questions of when and how disclosure is authorized.

## IV.

Having rejected the district court's finding that Rule 6(e)(6) authorized the disclosure of the grand jury materials in this case, we turn to whether the court had inherent authority to release the records in circumstances not enumerated in Rule 6(e)(3). We conclude that, even assuming such authority exists, it does not empower a court to order disclosure based only on a finding that historical interest in grand jury materials outweighs any countervailing considerations.

## A.

As a general matter, it is clear that federal courts have inherent authority to take some actions not expressly authorized by rule or statute when such actions are needed to facilitate or safeguard legal proceedings. Courts "invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course

- 8 -

of discharging their traditional responsibilities." Degen v. United States, 517 U.S. 820, 823 (1996).[2] It "has long been understood that 'certain implied powers must necessarily result to our Courts of justice from the nature of the institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal brackets omitted) (quoting United States v. Hudson, 7 Cranch 32, 34 (1812)). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R.R. Co., 370 U.S. 626, 630–31 (1962).

For example, courts possess inherent authority to "impose silence, respect, and decorum," Anderson v. Dunn, 6 Wheat. 204, 227 (1821); require "submission to their lawful mandates," id.; "fashion an appropriate sanction for conduct which abuses the judicial process," Chambers, 501 U.S. at 44–45; "hear a motion in limine," Dietz v. Bouldin, 579 U.S. 40, 45 (2016); entertain a "motion to dismiss for forum non conveniens," id.; and generally to "manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases," id. at 47 (collecting cases).

---

[2] This authority is variously referred to as implied power, inherent authority, supervisory authority, or supervisory power.

That being said, the Supreme Court long ago warned that inherent power "ought to be exercised with great caution," Ex parte Burr, 9 Wheat. 529, 531 (1824).  And it has more recently repeated that admonition.  See Chambers, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion."); Degen, 517 U.S. at 823 ("The extent of these powers must be delimited with care, for there is a danger of overreaching when one branch of the Government, without benefit of cooperation or correction from the others, undertakes to define its own authority.").  Importantly for our purposes, the Court has twice emphasized that "the exercise of an inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice."  Dietz, 579 U.S. at 45 (quoting Degen, 517 U.S. at 823-24).

The Supreme Court in Dietz held that "district courts have a limited inherent power to rescind a discharge order and recall a jury in a civil case" -- a power which should be wielded "cautiously" and whose use should be reviewed "carefully."  579 U.S. at 54.  As we will shortly explain, a district court undoubtedly has greater power to manage a trial jury than a grand jury.  But we assume that the Court's discussions of inherent authority in Dietz are also applicable to the case at hand.  In Dietz, the Court explained that it had "never precisely delineated the outer boundaries of a district court's inherent powers," but

had "recognized certain limits on those powers." Id. at 45. The Court then outlined two limits on the exercise of inherent authority. One is that "the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." Id. The other is that "the exercise of an inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice." Id. (quoting Degen, 517 U.S. at 823–24).

The Supreme Court has also recognized that courts have at least some authority over grand jury proceedings. United States v. Williams, 504 U.S. 36, 45–47 (1992). But a court's inherent authority over the grand jury is even narrower than its authority over matters before the court itself. Id. The Supreme Court has explained that "any power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings." Id. at 50. That is because the grand jury is an independent entity that has "not been textually assigned . . . to any of the [three] branches" of government. Id. at 47. Although the grand jury operates "under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length." Id.

- 11 -

Lepore argues that the courts' inherent authority over some aspects of grand jury proceedings, even if limited, is broad enough to empower a district court to order the release of grand jury materials in circumstances not covered by Rule 6(e). Whether this is so is a matter on which our sister circuits are divided.

On one side of the split, the Second and Seventh Circuits have held "that Rule 6(e)(3)(E) is permissive, not exclusive, and . . . does not eliminate the district court's long-standing inherent supervisory authority to . . . ensure the proper functioning of a grand jury," including by "unseal[ing] grand jury materials in circumstances not addressed by Rule 6(e)(3)(E)." Carlson v. United States, 837 F.3d 753, 766-67 (7th Cir. 2016); see also In re Petition of Craig, 131 F.3d 99, 101-03 (2d Cir. 1997) (reaffirming that "release of grand jury records [may be] appropriate even outside of the boundaries of [Rule 6(e)(3)]" (citing In re Biaggi, 478 F.2d 489, 494 (2d Cir. 1973) (supplemental opinion)).

On the other side of the split, four circuits have concluded "that Rule 6(e) is exhaustive, and that district courts do not possess inherent, supervisory power to authorize the disclosure of grand jury records outside of Rule 6(e)(3)'s enumerated exceptions." Pitch v. United States, 953 F.3d 1226, 1229 (11th Cir. 2020) (en banc), cert. denied, 141 S. Ct. 624

(2020)[3]; see also McKeever v. Barr, 920 F.3d 842, 850 (D.C. Cir. 2019) ("[A] district court has no authority outside Rule 6(e) to disclose grand jury matter."), cert. denied, 140 S. Ct. 597 (2020); United States v. McDougal, 559 F.3d 837, 840 (8th Cir. 2009) ("[C]ourts will not order disclosure absent a recognized exception to Rule 6(e) or a valid challenge to the original sealing order or its implementation."); In re Grand Jury 89-4-72, 932 F.2d 481, 488 (6th Cir. 1991) ("[A court] cannot, and must not, breach grand jury secrecy for any purpose other than those embodied by [Rule 6]").[4]

This circuit has yet to weigh in on whether Rule 6(e) exhausts the universe of possible justifications for disclosing grand jury materials. We have, however, considered the materially different question whether Rule 6(e)(2)(A) exhausts the universe of persons who "must not" disclose grand jury matters. We found

---

[3] Pitch overruled the Eleventh Circuit's prior decision in In re Petition to Inspect & Copy Grand Jury Materials (Hastings), 735 F.2d 1261 (11th Cir. 1984), which held that a district court's "inherent, supervisory power over the grand jury" allowed it to "authorize the disclosure of grand jury records outside of Rule 6(e)'s enumerated exceptions in certain 'exceptional circumstances.'" Pitch, 953 F.3d at 1229 (quoting Hastings, 735 F.2d at 1269).

[4] In re Grand Jury 89-4-72 considered then-extant Rule 6(e)(3)(C)(i), which permitted disclosures "sought 'preliminarily to or in connection with a judicial proceeding'" upon showing "a compelling need for disclosure" that "overcome[s] the general presumption in favor of grand jury secrecy." 932 F.2d at 483 (quoting Rule 6(e)(3)(C)(i)).

that it does not.  See In re Grand Jury Proc., 417 F.3d 18, 26 (1st Cir. 2005).

That being said, we need not decide in this case whether district courts possess some inherent authority to order the release of secret grand jury materials for reasons other than those identified in Rule 6(e)(3).  Rather, we need only decide the following narrower question:  Assuming that district courts possess some inherent authority to order the release of sealed grand jury materials in circumstances not covered by the Rule 6(e) exceptions, may they do so because the materials are considered historically significant?  To that question, we turn next.

**B.**

**1.**

As the foregoing discussion of inherent authority makes clear -- both generally and in relation to grand jury proceedings -- it cannot be exercised unless it is a "'reasonable response to the problems and needs' confronting the court's fair administration of justice." Dietz, 579 U.S. at 45 (quoting Degen, 517 U.S. at 823-24).  Prior to the 1944 adoption of Rule 6(e), courts discussed the circumstances in which the fair administration of justice justified ordering the release of grand jury materials.  See, e.g., United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 233-34 (1940) ("[A]fter the grand jury's functions are ended, disclosure is wholly proper where the ends of

- 14 -

justice require it."); Metzler v. United States, 64 F.2d 203, 206 (9th Cir. 1933) ("Where the ends of justice can be furthered thereby and when the reasons for [grand jury] secrecy no longer exist, the policy of the law requires that the veil of secrecy be lifted."). Consonant with this understanding of inherent judicial power, courts recognized their ability to disclose grand jury materials to refresh a witness's recollection at trial, Socony-Vacuum Oil, 310 U.S. at 233-34; "to prevent abuse in grand jury proceedings," Murdick v. United States, 15 F.2d 965, 968 (8th Cir. 1926); and, "in extreme instances," to "do what is needful to prevent clear injustice or an abuse of judicial process," McKinney v. United States, 199 F. 25, 27 (8th Cir. 1912). All of these examples feature a common element -- a focus on furthering the administration of justice within a particular legal proceeding.

Our own past reliance on inherent authority in In re Grand Jury Proceedings fits comfortably within this mold: We concluded that the district court's order was rooted in its inherent power "to impose secrecy orders incident to matters occurring before [it]." 417 F.3d at 26. The matter at hand concerned the integrity of an ongoing grand jury proceeding, and the order was aimed at "protecting [that] grand jury investigation from further abuse by one who ha[d] already demonstrated a capacity and intention to frustrate the investigation." Id. at 27. In other words, the court's "exercise of [its] inherent power" was "a

'reasonable response to the problems and needs' confronting the court's fair administration of justice" in an ongoing proceeding. Dietz, 579 U.S. at 45 (quoting Degen, 517 U.S. at 823-24).

Rule 6(e) -- which, as Lepore herself argues, "reflects rather than creates the relationship between federal courts and grand juries," Craig, 131 F.3d at 102 -- reinforces the link between disclosure and safeguarding the fair administration of justice. The purposes for which a court may disclose grand jury materials under Rule 6(e) invariably relate to administering judicial proceedings, protecting the integrity of the legal process, and facilitating the prosecution of a criminal offense. See Fed. R. Crim. P. 6(e)(3)(E)(i)-(v).

So while we may assume without deciding that there exists the inherent authority to order disclosure of grand jury materials in circumstances not expressly anticipated by Rule 6(e)(3),[5] we find in the foregoing no license to order disclosure for purposes other than protecting or furthering the fair administration of justice.

**2.**

In the last few decades, some courts have nevertheless disclosed grand jury materials because of their historical

---

[5] This assumption obviates the need to engage with Lepore's contention that Rule 6(e) imposes no secrecy obligations on courts or judges in the first instance.

- 16 -

significance.  See, e.g., In re Petition of Am. Hist. Ass'n, 49 F. Supp. 2d 274, 277-78 (S.D.N.Y. 1999) (grand jury transcripts related to the espionage investigation of Alger Hiss); In re Petition of Kutler, 800 F. Supp. 2d 42, 43, 48-50 (D.D.C. 2011) (Richard Nixon's grand jury testimony).  The circuit authority first to embrace this new justification for the exercise of inherent powers is Craig, in which the Second Circuit held that it is "entirely conceivable that in some situations historical or public interest alone could justify the release of grand jury information."  131 F.3d at 105.  The court reasoned that because the exercise of inherent authority to release grand jury records involves a "highly discretionary" and "fact-sensitive" inquiry, it precludes any rigid rule that "a certain factor -- like historical interest -- can never suffice as a matter of law" to permit the disclosure of grand jury records.  Id. at 105-06.  Rather, the court developed a non-exhaustive, nine-factor test to guide a court's exercise of its inherent authority.  Id. at 106.

Craig's approach departs from the traditional, restrained approach to wielding inherent judicial powers, at least where historically significant records do not implicate any ongoing proceedings.  To be sure, improving the public's knowledge of history can further the interests of justice as broadly understood.  See generally, e.g., Jill Lepore, These Truths: A History of the United States (2018).  But courts' inherent

authority concerns the administration of justice in our legal system. Toward that end, the exercise of inherent authority to order the disclosure of secret grand jury materials permits courts to "protect [legal] proceedings and judgments," Degen, 517 U.S. at 823 -- not to serve some more expansive notion of the public good. See Carlson, 837 F.3d 753 at 771 (Sykes, J., dissenting) ("It's hard to see how [a district court's] 'very limited' authority [over the grand jury] includes the sweeping power to release grand-jury records to the general public for reasons that strike the judge as socially desirable." (quoting Williams, 504 U.S. at 50)).

Perhaps unsurprisingly, then, Craig has little to say about the traditional contours of courts' inherent authority. Indeed, it does not cite Degen, and thus fails to engage with that case's "counsel [of] restraint in resorting to inherent power." 517 U.S. at 823. Nor does Craig cite Williams, ignoring its teaching that "any power federal courts may have to fashion . . . rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings." 504 U.S. at 50. And Craig predated Dietz, in which the Supreme Court reiterated that "[t]he exercise of an inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice." 579 U.S. at 45 (quoting Degen, 517 U.S. at 823-24).

Instead, Craig places significant weight on the fact that courts possess broad discretion in applying the Rule 6(e) exceptions. Id. at 102, 104. We see little logic in such reasoning. Whether a court has discretion in applying an exception says little about whether a court has the discretion to create other exceptions, or about the scope of any such discretion. The existence and contours of any residual discretion to disclose grand jury materials are better located in the precedent we have reviewed in the prior section of this opinion. And as we have explained, that precedent anchors any such discretion in the court's inherent authority to take steps necessary to further the fair administration of justice in a legal proceeding.

Craig does raise a fair policy question: What reason is there not to release now, for example, records of a grand jury proceeding conducted over a century ago? See 131 F.3d at 105 & n.9 (positing an imagined grand jury investigation into Abraham Lincoln's assassination). But the more apt question, in our view, is whether a federal judge should be the one to decide and act on that question, and in so doing resolve the additional questions that must be answered to limn the boundaries of what is disclosable based on assessments of historical significance. To name just a few such questions: How does a court determine whether particular

records are historically significant?[6]  Can an affected party exercise veto power even if the general public has a strong interest in disclosure?  And when has enough time passed -- both to make records a matter of "history" and to sufficiently diminish the countervailing interest in grand jury secrecy?[7]

Given the "restraint" that ought to govern courts' use of their inherent authority, Chambers, 501 U.S. at 44, such an endeavor strikes us as too far removed from the more specific interest -- "the court's fair administration of justice" -- that provides the principal and principled limitation on a court's exercise of inherent authority, Dietz, 579 U.S. at 45.  And even if we were otherwise willing to wade into these uncertain waters, the Supreme Court has held that a court abuses its discretion when it releases grand jury materials based on "an evaluation entirely beyond [the court's] expertise."  Douglas Oil, 441 U.S. at 228-

---

[6] Lepore's own work demonstrates that historical significance is a broad and evolving concept.  E.g., Jill Lepore, Book of Ages:  The Life and Opinions of Jane Franklin (2013) (National Book Award Finalist chronicling the life of Benjamin Franklin's youngest sister, who lived and died in relative obscurity in her own time); Jill Lepore, Just the Facts, Ma'am:  Fake memoirs, factual fictions, and the history of history, New Yorker, Mar. 24, 2008, https://www.newyorker.com/magazine/2008/03/24/just-the-facts-maam (opining that history "should . . . tell the story of ordinary people").

[7] Lepore contends that fifty years should be enough, but that is not self-evident.  Harvard University, for example, apparently maintains student and employee records under seal for eighty years. Bruce A. Kimball & Daniel R. Coquillette, The Intellectual Sword: Harvard Law School, the Second Century app. J (2020).

29.  The administration of justice in a particular proceeding falls well within that expertise; the gauging of historical significance, less so.  Rather, such an endeavor strikes us as a task better suited to Congress,[8] or the Rules Committees.[9]

These observations lead us to reject the reasoning of those few courts that have relied on their inherent authority to order disclosure of grand jury materials based on historical significance absent a need to ensure the fair administration of justice in a legal proceeding.  Given this conclusion, we need not

---

[8]  Indeed, Congress has at least twice enacted legislation authorizing disclosure of historically significant grand jury materials.  See President John F. Kennedy Assassination Records Collection Act of 1992, Pub. L. No. 102-526, §§ 4(a)(1), 10(a)(2), 106 Stat. 3443, 3445, 3456 (codified at 44 U.S.C. § 2107 note); Civil Rights Cold Case Records Collection Act of 2018, Pub. L. No. 115-426, § 8(a)(2), 132 Stat. 5489, 5501 (2019) (codified at 44 U.S.C. § 2107 note).  And draft legislation presently pending before a House subcommittee would permit the release of grand jury materials related to the FBI surveillance program known as COINTELPRO.  See COINTELPRO Full Disclosure Act, H.R. 2998, 117th Cong. §§ 2(a), 7(a)(2) (2021).  Should Congress enact some version of that bill into law, it presumably will reflect legislative factfinding and a broad consensus about the propriety of authorizing the records' release.

[9]  The Advisory Committee on Criminal Rules has twice rejected proposals to amend Rule 6(e) to permit disclosure of historically significant grand jury records.  During its most recent consideration of such an amendment, a subcommittee "gather[ed] the views of experienced prosecutors, defense counsel, historians, journalists, and others affected by grand jury secrecy" and compared multiple proposals. Memorandum from Professors Sara Sun Beale & Nancy King, Reporters, to the Members of the Advisory Comm. on Crim. Rules, at 2-3 (Oct. 6, 2021).  At least when the administration of justice in a legal proceeding is not at issue, such a process seems more conducive to considered policymaking than is piecemeal adjudication based on inherently limited input.

- 21 -

and do not define the exact contours of a court's inherent power to disclose grand jury materials when the fair administration of justice in a proceeding is at issue.[10]

### 3.

Three loose ends remain. First, Lepore argues that courts have latitude to disclose grand jury records because they are judicial records. But calling grand jury records judicial records does not change our calculus. We recognize that in general a court has "supervisory power over its own records and files." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597–98 (1978). But a court's power over grand jury records is surely diminished by its "arm's-length" relationship to the grand jury. Williams, 504 U.S. at 47. More fundamentally, we have assumed that courts do indeed retain some inherent power to disclose grand jury records. The question in this case is the proper scope of that power. Pointing to the mere fact that grand jury records may be called judicial records does not meaningfully advance the resolution of that question.

Second, Lepore insists that disclosing historically significant records would not offend the principles the Supreme

---

[10] While Lepore's declaration filed in the district court suggests the possibility that the materials at issue may disclose some misconduct or abuse in the 1971 grand jury proceedings, her brief on appeal advances no argument along these lines. More to the point, she fails to identify any proceeding in which fair administration might require releasing the records she seeks.

Court articulated in Williams because it would not "reshap[e] . . . the grand jury institution" or "substantially alter[] the traditional relationship[]" between the court and the grand jury. 504 U.S. at 50. But even if the power the district court exercised is not the kind of conduct that Williams held to be "certainly" impermissible, id., that still leaves unanswered the question whether the court possessed that power in the first place. We have concluded that it did not.

Finally, Lepore argues that the Advisory Committee on Criminal Rules understands courts to possess inherent authority to disclose historically significant materials. She relies on meeting minutes from 2012 -- more than three decades after Congress enacted relevant provisions of Rule 6(e). The government counters that these minutes are akin to "[p]ost-enactment legislative history," which "is not a legitimate tool of statutory interpretation." Bruesewitz v. Wyeth LLC, 562 U.S. 223, 242 (2011). In any event, reporters to the Advisory Committee on Criminal Rules more recently opined that "the issue of inherent authority is a question of the constitutional authority of Article III courts, which the Committee has no authority to resolve." Memorandum from Professors Sara Sun Beale & Nancy King, Reporters, to the Members of the Advisory Comm. on Crim. Rules,

at 13 (Oct. 6, 2021).[11]

**V.**

For the foregoing reasons, we <u>reverse</u> both the order of the district court requiring the disclosure of the grand jury materials and the judgment entered in favor of petitioner.

---

[11] This is not to say that the Committee lacks the authority to amend Rule 6(e) to permit disclosure of historically significant grand jury records if the Committee were so convinced.